[No. S059461. Mar. 5, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID HANS MORALES, Defendant and Appellant.

**COUNSEL**

Richard Jay Moller, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster, Brenda G. O'Neil, William T. Harter and Jeffrey Kahan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—We granted review to decide whether a prosecutor committed prejudicial misconduct in his summation to the jury in a criminal case. We conclude that the prosecutor's actions do not require that defendant's conviction be reversed.

I

In an information filed December 8, 1995, defendant was charged with violating Health and Safety Code section 11377, subdivision (a), by possessing phencyclidine (PCP). (See also *id.*, § 11055, subd. (e)(3)(A).) It was alleged that he had two prior (Pen. Code, § 667, subds. (b)-(i); *id.*, § 1170.12, subds. (a)-(d)) robbery (*id.*, § 211) convictions and had served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b).

On the evening of November 3, 1995, defendant's wife asked Los Angeles police officers to help her husband, who was outside in the police station parking lot. The officers found him sitting in the opening of the sliding door of a van that was parked askew with the driver's door also open. The officers ordered him to stand up and put his hands on his head. He slowly complied, but only after they gave the order several times. They noticed that he was sweating, had a blank stare, and exuded an odor revealing the presence of ether, in turn revealing the use of phencyclidine. They removed a partly exposed vial from under the driver's seat, containing a liquid that also exuded a strong ethereal odor attributable to PCP.

In the station, a police officer trained to recognize signs of drug use observed defendant and ran tests on him. One test, however—of urine to detect PCP's presence—defendant ultimately refused to take (after initially agreeing to do so), even after a police officer admonished him that he had no constitutional right to avoid it.[1]

The officer determined that defendant was under the influence of PCP. The vial's contents also were tested. An expert witness testified that the vial held a solution containing about three cubic centimeters of PCP.

A police officer who helped arrest defendant testified he did not know who owned the van or who had driven it to the police station.

[1]Defendant does not dispute that the police procedure was permitted under the federal Constitution, or that it did not offend that Constitution for the jury to hear the officer's testimony about his refusal to undergo the test. (*Pennsylvania v. Muniz* (1990) 496 U.S. 582, 604-605 [110 S.Ct. 2638, 2652, 110 L.Ed.2d 528].)

Following the presentation of evidence at trial, the jury was instructed regarding PCP possession: "Every person who possesses . . . phencyclidine . . . is guilty of the crime of illegal possession of a controlled substance, in violation of Health and Safety Code section 11377(a).

"In order to prove such crime, each of the following elements must be proved: one, a person exercised control [over] or the right to control a certain controlled substance; two, such person had knowledge of its presence; three, such person had knowledge of its nature as a controlled substance; and, four, the substance was in an amount sufficient to be used as a controlled substance."

"Actual possession requires . . . direct physical control . . ."

With those impending instructions in mind, the parties presented their summations.

In his initial closing argument, the prosecutor said, "you're here to make one decision, and that is on November 3rd, 1995, was the defendant in possession of a controlled substance. . . . [¶] As you look at this evidence, certainly, the most compelling evidence is that the defendant was under the influence of PCP. And you think to yourself, '. . . is there any way on this planet you could physically become under the influence of PCP if you didn't possess it at some time before you became under the influence?' It's kind of hard to sit and get drunk on beer if you don't have any beer; okay?" The prosecutor summarized the evidence that defendant was under the influence of PCP when the police found him, "and in the van . . . is a vial of PCP. [¶] Now, you . . . [might] say, 'Well, gee, how do we know that was the vial and we know he's on PCP?' We know he got there by being in possession of PCP. How do we know that was the PCP? Maybe he had another bottle at home, or maybe he had five other bottles at home. That's not the issue. [¶] The only issue for you to decide, ladies and gentlemen, is, do you believe . . . that on . . . or about November the 3rd, 1995, the defendant was in possession of . . . PCP? [¶] And it does not necessarily require that you all unanimously agree that it was some PCP from this vial. That is simply additional evidence that what he was under the influence [of] was clearly PCP, and in order to get under the influence, he had to possess PCP Pretty simple process. [¶] . . . [¶] . . . [T]he evidence . . . establishes that the defendant had to have been in possession of PCP in order to get under the influence of PCP on November the 3rd . . . ."

Defense counsel made his closing argument, in which he tried to persuade the jury that the prosecution had presented no direct evidence that defendant

possessed PCP—"[n]obody saw anybody in direct control of [the vial]"—and that the circumstantial evidence was insufficient to convict him. Counsel emphasized that "unless the proved circumstances are, one, not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion, a finding of guilty as to any crime may not be based on circumstantial evidence." There was "[n]o proof that the van was owned by [defendant] legally or registered to him. No proof that he even drove that van."

"Now, we have a vial here that was found underneath the driver's seat. Mr. Morales was seated . . . in the back . . . . [¶] . . . [¶] We don't know who put the van there. . . . [¶] We don't know how long that vial was there. There were no fingerprints taken from the vial." He asked why, if the state wanted to solidify its case, it had failed to take fingerprints. "Remember what this case is here. The charge is possession." "Where is the evidence beyond a reasonable doubt that Mr. Morales exercised control over that vial?"

The prosecutor responded: "The reality here is that Mr. Morales is sitting in this van . . . . [¶] . . . And Mr. Morales is wasted . . . . He is intoxicated on PCP [¶] And then, of course, one could speculate. 'Well, gee, how do we know that this was not an immaculate intoxication? That he was simply overcome with PCP spirit or something, out of outer space or something.' [¶] We know because we have a lifetime of experience.[2] You don't get drunk unless you take in the intoxicant. You can't take in the intoxicant if you don't have it. Very simple. Very simple deductive process. I can't drink beer until I'm drunk unless I have beer to drink. [¶] And [defense] counsel adeptly says there are the elements of the offense of possession[;] one must exercise control in order to ingest the intoxicant. [But] I've got to be in control of it, unless, of course, someone is holding me down and force-feeding me this intoxicant; okay? But you cannot speculate on things, . . . what might have been or could have been. You have to rely on the evidence.

"Now, you have to be aware of the [drug's] presence. It's a little hard to get yourself loaded if you're not aware of the presence of what you're getting yourself loaded on. And the nature of it. If I sit down with a six-pack of Budweiser, and I drink that six-pack of Budweiser, I know the nature of

---

[2]Earlier, on this theme, the prosecutor had argued that the jurors were "here as judges because you're human beings and you bring with you a lifetime of experience, and those are the things that make judgments about human conduct possible. Computers have not quite achieved the point where they can say, you know, electronically, 'We know what humans do. We know how they act.' You know, the good old computers have yet to master the common sense of the human being."

it. And if I get intoxicated on that six-pack, it's because I knew the nature of it. That's why I drank it. [¶] And it has to be an amount sufficient to be used as a controlled substance. . . . He was high. He was intoxicated. [¶] . . . He had certainly enough to get loaded on it. If he didn't, he would have been sober. So all of those elements are conclusively proven based upon the condition that Mr. Morales is in at the time he's found. . . .

"Now, the vial of PCP in the van in which . . . Mr. Morales is found is certainly circumstantial evidence, that it is PCP we're talking about. . . . [¶] If someone finds me [lying] in the street, smelling of beer and heavily intoxicated, and I am surrounded by Budweiser bottles, it's going to be pretty easy to figure out what substance it is that got me drunk. . . . Although, maybe I didn't get drunk on one of those bottles or two of those bottles; it may have been one that's over behind the bushes that added the final touch. That's not the issue here, so don't be misled, ladies and gentlemen."

The prosecutor reminded the jury of the evidence that both defendant and the vial exuded the "distinct" odor attributable to a PCP solution.

In sum, having referred to the jurors' life experience, the prosecutor argued that they could conclude defendant consumed PCP voluntarily, knowing what it was, for the purpose of intoxicating himself with it.

Along with those we have already described, the trial court instructed the jurors in other matters relevant here.

Regarding its role and that of the attorneys, the trial court orally instructed, "You must accept and follow the law as I state it to you, whether or not you agree with the law. If anything concerning the law said by the attorneys in their arguments, or at any other time during the trial, conflicts with my instructions on the law, you must follow my instructions and disregard what they say regarding the law." (The written instruction omitted the last eight words.)

And regarding the method of evaluating circumstantial evidence, the trial court instructed, "a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only, one, consistent with the theory that the defendant is guilty of a crime, but, two, cannot be reconciled with any other rational conclusion."

"Also," the instructions stated, "if the circumstantial evidence as to any particular count is susceptible of two reasonable interpretations, one of

which points to the defendant's guilt and the other to his being not guilty, you must adopt that interpretation which points to the defendant's being not guilty and reject that interpretation which points to his guilt. [¶] If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

After the jury began deliberating, it asked that defendant's closing argument be read back to it. Neither the parties nor the trial court had ever witnessed a closing argument read back to a jury, though defendant urged the court to comply with the jury's request and said he was prospectively objecting if it did not do so. After a recess for the parties to research the issue, the court called the jury back into court and, over defendant's prior objection, denied the request.

The jury convicted defendant of the charge and found the allegations to be true. The trial court imposed a prison term of 26 years to life, and $1,050 in fines and fees.

The Court of Appeal affirmed the judgment. As relevant here, it concluded that there was no prosecutorial misconduct.

## II

Health and Safety Code section 11377, subdivision (a), provides: "Except as authorized by law and as otherwise provided in [other legal provisions], every person who possesses any controlled substance . . . specified in subdivision . . . (e) . . . of Section 11055, unless upon the prescription of a physician, dentist, podiatrist, or veterinarian, licensed to practice in this state, shall be punished by imprisonment in a county jail for a period of not more than one year or in the state prison."[3] Subdivision (e)(3)(A) of section 11055 of the Health and Safety Code lists PCP as being among such substances.

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.' " (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 [40 Cal.Rptr.2d 722, 893 P.2d 717] (*Palaschak*).)

Defendant claims that the prosecution presented its case to the jury on a theory that was " 'legally incorrect,' " wherefor " 'the conviction cannot

---

[3]The statute was not materially different at the time of the crime.

stand.' " (*People v. Guiton* (1993) 4 Cal.4th 1116, 1122 [17 Cal.Rptr.2d 365, 847 P.2d 45] (*Guiton*).) Specifically, he contends that the prosecutor's arguments misled the jury about the law governing PCP possession, in violation of state law and the due process clause of the Fourteenth Amendment to the United States Constitution. He further maintains that charging him with and trying him for possessing PCP was improper given that the Legislature has passed a less severe law proscribing PCP use. We consider each argument in turn.

### 1. *The Prosecutor's Closing Argument*

As alluded to, defendant contends that *Guiton, supra,* 4 Cal.4th 1116, and the precedent it discussed, particularly *People v. Green* (1980) 27 Cal.3d 1 [164 Cal.Rptr. 1, 609 P.2d 468] (*Green*), govern this case and, in light of the prosecutor's closing arguments, compel reversal.[4] We disagree.

Guiton was convicted of selling or transporting cocaine, a single offense set forth statutorily in the disjunctive (Health & Saf. Code, § 11352, former subd. (a).; Stats. 1989, ch. 1102, § 1, p. 3936) and charged as a single count. The Court of Appeal found sufficient evidence he transported cocaine, but insufficient evidence that he sold it, could not determine on which basis the verdict rested, and ordered reversal. We reversed in turn, reinstating Guiton's conviction.

In discussing Guiton's case, we noted that presenting a jury with a criminal case premised on an incorrect legal theory usually does require reversal. " 'Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error.' " (*Guiton, supra,* 4 Cal.4th at p. 1125, quoting *Griffin v. United States* (1991) 502 U.S. 46, 59 [112 S.Ct. 466, 474, 116 L.Ed.2d 371].)

In *Green, supra,* 27 Cal.3d 1, Green moved the victim three times. We "found [legal] error as to two of the three possible segments of asportation, . . . [and] could not determine from the record whether the jury based its verdict on either of the 'legally insufficient segments of [the victim's]

---

[4]*Green, supra,* 27 Cal.3d 1, was overruled on other points by *People v. Hall* (1986) 41 Cal.3d 826, 834 [226 Cal.Rptr. 112, 718 P.2d 99], footnote 3, and *People v. Martinez* (1999) 20 Cal.4th 225, 239 [83 Cal.Rptr.2d 533, 973 P.2d 512].

asportation. . . .' " (*Guiton, supra,* 4 Cal.4th at p. 1121, quoting *Green,* at p. 67.) The errors were, with regard to the first movement, instructional (*Green, supra,* 27 Cal.3d at pp. 63-64), and with regard to the third, that no crime had occurred under the facts adduced (*id.* at pp. 65-67). Each error amounted to the presentation of a legally deficient case, and "[u]nder the circumstances, we stated this general rule: '[W]hen the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested, the conviction cannot stand.' " (*Guiton,* at p. 1122, again quoting *Green,* at p. 69.)

*Guiton* and *Green* are unlike this case in that in each of them, the court presented the state's case to the jury on an erroneous legal theory or theories. In *Green,* the instructions were deficient, either because their language was legally unsupported (the first movement), or because (regarding the third movement) there was insufficient evidence to proceed. The evidence regarding the third movement did not describe a crime. When the court did nothing to "disabuse[] the jury of [the] notion" (*Green, supra,* 27 Cal.3d at p. 68) that it did (a defect it could have cured with a preclusive instruction), it ratified the prosecutor's error. The dissent in *Green* summarized the majority's reasoning in these terms: "had the jury been properly instructed regarding the law of kidnaping, and particularly had it been told that neither a fraudulent asportation nor a 90-foot movement would constitute kidnaping, it might have acquitted defendant of that offense." (*Id.* at p. 81 (conc. & dis. opn. of Richardson, J.).)

In *Guiton,* too, a theory unsupported by evidence was presented to the jury in the very trying of the case—he was charged with selling cocaine despite a lack of evidence that he engaged in this conduct. Again, the trial court should have modified the instructions in light of this fact. We said, in language equally applicable to *Green:* "Trial courts have the duty to screen out invalid theories of conviction, either by appropriate instruction or by not presenting them to the jury in the first place. Although the presenting of alternate theories to the jury here does not require reversal, we stress that it was error nonetheless." (*Guiton, supra,* 4 Cal.4th at p. 1131.)

In this case, by contrast, the court did not present to the jury a case that was premised on a legally incorrect theory. The prosecutor arguably misstated some law, but such an error would merely amount to prosecutorial misconduct (see *People v. Osband* (1996) 13 Cal.4th 622, 696 [55 Cal.Rptr.2d 26, 919 P.2d 640]) during argument, rather than trial and resolution of the case on an improper legal basis.

When a defendant believes the prosecutor has made remarks constituting misconduct during argument, he or she is obliged to call them to the court's

attention by a timely objection. Otherwise no claim is preserved for appeal. (E.g., *People v. Osband, supra,* at p. 696.)

Defendant made no objection to the prosecutor's remarks and thus has waived his claim. His appeal is foreclosed on that basis. Moreover, even if the claim had not been waived, it would lack merit.

■ The standards under which we evaluate prosecutorial misconduct may be summarized as follows. A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. (*People v. Ayala* (2000) 23 Cal.4th 225, 283-284 [96 Cal.Rptr.2d 682, 1 P.3d 3].)

■ At closing argument a party is entitled both to discuss the evidence and to comment on reasonable inferences that may be drawn therefrom. (See *People v. Bemore* (2000) 22 Cal.4th 809, 846 [94 Cal.Rptr.2d 840, 996 P.2d 1152]; *People v. Sandoval* (1992) 4 Cal.4th 155, 183 [14 Cal.Rptr.2d 342, 841 P.2d 862] [both speaking of the prosecutor's entitlement in this regard].)

■ Recently, in *Palaschak, supra,* 9 Cal.4th 1236, we considered the law against possessing controlled substances. We explained that evidence of having introduced a controlled substance into one's body may be evidence of having possessed it—in many cases, "one who ingests a drug must have possessed it at least temporarily." (*Id.* at p. 1241.) As long as the past possession occurred within the statute of limitations period, it could be punished as such. (*Id.* at p. 1240.)

But we did not state in *Palaschak* that evidence of being under the influence of a contraband substance, or other evidence of having introduced it into one's body, is by itself *proof* of present or past possession. And it is not.

Certainly, evidence of being identifiably under the influence of a specific drug or other evidence of having introduced it into one's body tends to prove having knowingly, and hence unlawfully, possessed it. "Intoxication has

obvious relevance to the question of awareness, familiarity, understanding and the ability to recognize and comprehend" the presence of an illegal intoxicating drug. (*People v. Foster* (1971) 19 Cal.App.3d 649, 655 [97 Cal.Rptr. 94].)

But intoxication does not always prove possession, past or present. Every crime requires a union of an act and a criminal mental state. (See Pen. Code, § 20 [referring to an act accompanied by intent or negligence].) Thus, we at least implied in *Palaschak* that "evidence of drug ingestion" without more "is insufficient to sustain an unlawful possession charge." (*Palaschak, supra,* 9 Cal.4th at p. 1239, italics omitted.) "[D]epending on the circumstances, mere ingestion of a drug owned or possessed by another might not involve sufficient control over the drug, or knowledge of its character, to sustain a drug possession charge." (*Id.* at p. 1241; see *People v. Rubacalba* (1993) 6 Cal.4th 62, 67 [23 Cal.Rptr.2d 628, 859 P.2d 708] [speaking of possession].) For example, as hypothesized by counsel at oral argument, another individual could have soaked PCP invisibly into a cigarette that defendant smoked, unaware of the adulteration. Or the amount possessed might be too minuscule to assign criminal liability—i.e., useless. (*People v. Rubacalba, supra,* 6 Cal.4th at p. 66.) Or a drug may have been possessed or introduced into the body under duress, and depending on the circumstances, that might not be criminal. (Pen. Code, § 26, subd. 6; see *People v. Bacigalupo* (1991) 1 Cal.4th 103, 125 [2 Cal.Rptr.2d 335, 820 P.2d 559], vacated and remanded on other grounds *sub nom. Bacigalupo v. California* (1992) 506 U.S. 802 [113 S.Ct. 32, 121 L.Ed.2d 5].)[5]

Defendant contends in sum that the prosecutor ran afoul of the foregoing principles when he presented an improper theory of guilt to the jury—namely, that even if the jurors, or some of them, did not believe he possessed the vial found in the van, they could still find him guilty of possessing PCP because he could not have been under the influence of the drug without first possessing it in some form.

Like the Court of Appeal, we disagree with defendant's interpretation of the prosecutor's summation. We acknowledge, however, that the question is close.

We are able to discern instances in which the prosecutor did urge the jury that if defendant was under the influence of PCP, that was enough to

---

[5]Absent the requirements of an act accompanied by criminal intent, and of a usable quantity of the substance, virtually every adult residing in California (except, ironically, long-term prisoners and others institutionalized at length) might be guilty of possessing cocaine (Health & Saf. Code, § 11350, subd. (a); *id.,* § 11055, subd. (b)(6)), given the possibility that in recent years 97 percent of all paper money circulating in the United States has been contaminated with cocaine (*U.S. v. $5,000.00 in U.S. Currency* (6th Cir. 1994) 40 F.3d 846, 849), 90 percent of it sufficiently so contaminated as to be detectable by a trained dog (*ibid.*).

establish possession. The prosecutor began by telling the jury that "certainly, the most compelling evidence is that the defendant was under the influence of PCP. And you think to yourself, '. . . is there any way on this planet you could physically become under the influence of PCP if you didn't possess it at some time before you became under the influence?'" He later told the jurors that they need not "unanimously agree that it was some PCP from this vial"—i.e., the vial found on the van's floor. "That is simply additional evidence that what he was under the influence [of] was clearly PCP, and in order to get under the influence, he had to possess PCP Pretty simple process." "You don't get drunk unless you take in the intoxicant. You can't take in the intoxicant if you don't have it. Very simple. Very simple deductive process. I can't drink beer until I'm drunk unless I have beer to drink."

But to focus solely on the foregoing remarks, stripped of their context, would be to leave our discussion incomplete. Defendant was found, intoxicated by PCP, in a van containing a vial of the substance. His wife had gone to the police seeking help for him—presumably, help in dealing with the substance's effects. That evidence, by itself, is susceptible of various interpretations: that he voluntarily consumed PCP, or that he ingested it unwittingly or unwillingly. Invoking the jurors' life experience, the prosecutor argued for the former interpretation. That was proper argument.

It is important to recall the state of the evidence—and the prosecutor referred at other times to its state. The jury had also heard testimony that defendant had refused to take a urine test for the substance's presence. *That* evidence is not consistent with unwitting or coerced (in sum, involuntary) ingestion of PCP. It is evidence of voluntary self-administration of the substance, knowing it to be an illegal intoxicant. The prosecutor pointed out that the jury needed to examine the case in light of the evidence presented. "[T]he evidence," he argued, "establishes that the defendant had to have been in possession of PCP in order to get under the influence of PCP on November the 3rd . . . ." He agreed with defendant that among "the elements of the offense of possession" he needed to prove was control; "one must exercise control in order to ingest the intoxicant. [But] I've got to be in control of it, unless, of course, someone is holding me down and force-feeding me this intoxicant; okay? But you cannot speculate on things, . . . what might have been or could have been. You have to rely on the evidence."

The instructions forbade "a finding of guilt . . . based on circumstantial evidence unless the proved circumstances are not only, one, consistent with the theory that the defendant is guilty of a crime, but, two, cannot be

reconciled with any other rational conclusion." If defendant had evidence to rebut the prosecution's evidence of knowing and voluntary ingestion, he could have presented it to invite the jury's conclusion that his possession was unwitting or unwilling. He did not do so.[6]

Viewed in context, we find no reasonable likelihood that the prosecutor's arguments misled the jury in an objectionable fashion—i.e., so as to improperly convict him of possessing PCP. To be sure, the advantage of hindsight allows us to say that the prosecutor's arguments were less than ideal. He should have argued the importance of defendant's actions inside the police station. Refusing to provide a urine sample was evidence of defendant's voluntary self-administration of PCP, knowing it to be an illegal intoxicant. (See *People v. Johnson* (1992) 3 Cal.4th 1183, 1235 [14 Cal.Rptr.2d 702, 842 P.2d 1], citing *People v. Roach* (1980) 108 Cal.App.3d 891, 893-894 [166 Cal.Rptr. 801] [proper to instruct that refusing to take a urine test is evidence of consciousness of guilt]; *ante*, p. 38 [knowledge of substance's restricted-dangerous-drug character].) Had the prosecutor commented specifically on defendant's refusal to take the urine test, the question before us would be easier to resolve. Still, the arguments, read as a whole and in light of the evidence before the jury, were not improper—the prosecutor was arguing that the jurors could deduce that defendant voluntarily ingested PCP whether or not he drew it from the vial in the car.

In sum, there was no misconduct. Moreover, we presume that the jury relied on the instructions, not the arguments, in convicting defendant. "[I]t should be noted that the jury, of course, could totally disregard *all* the arguments of counsel." (*Green, supra,* 27 Cal.3d at p. 76 (conc. & dis. opn. of Richardson, J.).) Though we have focused on the prosecutor's closing arguments, we do not do so at the expense of our presumption that "the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." (*People v. Sanchez* (1995) 12 Cal.4th 1, 70 [47 Cal.Rptr.2d 843, 906 P.2d 1129].) The trial court emphasized this rule when, as stated, it instructed the jury to follow its instructions and to exalt them over the parties' arguments and statements.

The instructions themselves did not permit a conviction solely on evidence of intoxication, but required, as stated, that the jury find defendant "exercised control [over] or the right to control a certain controlled substance; two, [he] had knowledge of its presence; three, [he] had knowledge

---

[6]This point was raised at oral argument. Counsel argued: "The [district attorney] . . . has the burden to provide some proof beyond simply the proof [that if] this guy's under the influence he must have possessed the drug." But the prosecution did provide sufficient evidence relevant to the elements of possession to satisfy the jury.

of its nature as a controlled substance; and, four, the substance was in an amount sufficient to be used as a controlled substance." This instructional language is found in CALJIC No. 12.00 (5th ed. 1989 rev.), evidently used at the time of trial, and is different today only in nonsubstantive respects (*id.* (6th ed. 1996 bound vol.)). ██ ██ It accurately restated the law.[7] (*Palaschak, supra,* 9 Cal.4th 1236, 1242.)[8] Also regarding the instruction's fourth component, "the . . . usable-quantity rule prohibits conviction only when the substance possessed simply cannot be used, such as when it is a blackened residue or a useless trace. It does not extend to a substance containing contraband, even if not pure, if the substance is in a form and quantity that can be used. No particular purity or narcotic effect need be proven." (*People v. Rubacalba, supra,* 6 Cal.4th 62, 66.)[9]

The instructions were governing and, contrary to the dissent's insistences, were clear.

We recognize that *Green's* discussion of asportation could be read to suggest that because the closing argument is part of the presentation of the state's case, error may arise solely from improper remarks made therein. That would, however, be an incorrect reading of precedent. *Green, supra,* 27 Cal.3d 1, stands for the proposition that the prosecution may present a case in which jurors may have been (1) legally misled by instructions or evidence, i.e., presented an "alternate theory [that] is legally erroneous" (*id.* at p. 69) because it is based on (a) incorrect instructions or (b) inadmissible evidence; or (2) factually misled by evidence, "i.e., when the reviewing court holds the evidence insufficient to support the conviction" (*id.* at p. 70). Properly understood, *Green* reasons that in cases suffering from insufficient evidence, deficient instructions, or other errors made in presenting evidence or giving instructions, ill-advised remarks by the prosecutor may compound the trial's defects. Nothing of the type occurred here.

Were we to apply the rule defendant prefers, then arguably, as we inquired about at oral argument, it would be prejudicial misconduct for a prosecutor

---

[7]Though we cite CALJIC No. 12.00 for reference purposes, we caution that jury instructions, whether published or not, are not themselves the law, and are not authority to establish legal propositions or precedent. They should not be cited as authority for legal principles in appellate opinions. At most, when they are accurate, as the quoted portion was here, they restate the law.

[8]The instruction's "right to control" language relates to constructive possession (*People v. Barnes* (1997) 57 Cal.App.4th 552, 556-557 [67 Cal.Rptr.2d 162]; *Armstrong v. Superior Court* (1990) 217 Cal.App.3d 535, 538-539 [265 Cal.Rptr. 877]), a matter that does not appear to be at issue here.

[9]In this regard, the prosecutor's arguments were more generous to defendant than they need have been. The prosecutor told the jury it could not convict defendant unless he had ingested "enough to get loaded." To be sure, this was a minor concession, because, as the prosecutor next argued, with substantial support in the evidence, "He had certainly enough to get loaded on it. If he didn't, he would have been sober."

to discuss only certain elements of a crime during closing argument, rather than all of them. Such a rule would confine argument, running the risk of turning it into a colloquially worded version of the instructions. The law does not require such a stricture.[10]

## 2. *Prosecuting for Possession Versus Use*

■ As mentioned, defendant claims that charging him with and trying him for possessing PCP was improper. His argument is that the Legislature passed a less severe law proscribing PCP use, the evidence of his ingestion sufficed to show that he consumed the drug, and to rely on evidence of use to prove the more severe offense of possession violates the intent underlying the statutory scheme.

We rejected this claim, at least implicitly, in *Palaschak, supra,* 9 Cal.4th 1236. We explained that though it may be true "that the Legislature, in other contexts, has often punished use of drugs less severely than possession thereof [citation], thus indicating some legislative intent to distinguish between use and possession of illegal drugs," so that "a rule that would allow a possession charge and conviction to be based solely on evidence of use might unduly blur the distinction between use and possession," as long as " '[t]he People introduced substantial evidence to satisfy each of the[] elements [of possession required under CALJIC. No. 12.00]' " the conviction of possession was proper. There as here " '[a]ppellant exercised control over the [drug]. He knew [it] was in his office, knew it was a controlled substance, and knew it was a usable amount.' " (*Palaschak, supra,* 9 Cal.4th at p. 1240.)

We continued in this vein, saying "we can discern no good reason why substantial evidence of past possession of [an illegal drug] (within the period of the applicable statute of limitations) should be deemed insufficient to sustain a conviction of that offense." (*Palaschak, supra,* 9 Cal.4th at p. 1240, italics omitted.)

We find *Palaschak*'s reasoning to apply to the circumstances of this case, and to defeat defendant's claim.

## DISPOSITION

In sum, we find defendant's first claim to have been waived, and his second claim to be without merit. We affirm the Court of Appeal's judgment.

George, C. J., Baxter, J., and Chin, J., concurred.

---

[10]We also would reject defendant's federal constitutional claim if required to reach it on the merits. The prosecutor did not engage in conduct so unfair as to deny him due process. No behavior even close to the required standard appears in the record.

**KENNARD, J., Concurring and Dissenting.**—Both Justice Mosk's majority opinion and Justice Brown's dissenting opinion conclude that evidence of a defendant's ingesting an illegal drug is, standing alone, insufficient to support a conviction for possessing that drug. (Maj. opn., *ante*, at p. 45; dis. opn., *post*, at pp. 56-57.) I agree.

I disagree, however, with the majority's conclusion that the prosecutor did not commit misconduct when, in closing argument, he repeatedly told the jury that because defendant was under the influence of phencyclidine, defendant necessarily must be guilty of having possessed the drug, or he could not have reached this state of intoxication. (See generally *People v. Hill* (1998) 17 Cal.4th 800, 829-830 [72 Cal.Rptr.2d 656, 952 P.2d 673] [it is misconduct for the prosecutor to misstate the law in closing argument]; *People v. Marshall* (1996) 13 Cal.4th 799, 831 [55 Cal.Rptr.2d 347, 919 P.2d 1280] [same]; *People v. Bell* (1989) 49 Cal.3d 502, 538 [262 Cal.Rptr. 1, 778 P.2d 129] [same].) On this point, I agree with the dissent that the prosecutor's comments were highly improper.

Defendant, however, has not preserved this issue for appeal, because he never objected to the prosecutor's argument, nor did he ask the trial court to admonish the jury to disregard it. (See generally *People v. Osband* (1996) 13 Cal.4th 622, 696 [55 Cal.Rptr.2d 26, 919 P.2d 640].) Justice Brown's dissent, which characterizes the prosecutor's argument as an "erroneous theory of guilt," maintains there was no need for defendant to object, because the prosecutor's erroneous theory "differs qualitatively from a simple misstatement of a legal principle." (Dis. opn., *post*, at p. 54 & fn. 2.) I do not share that view. The dissent distinguishes the prosecutor's argument here from a prosecutor's misstatement of the law on reasonable doubt. The latter situation, the dissent notes, does require an objection; otherwise, the issue is not preserved for appeal. (See *People v. Green* (1980) 27 Cal.3d 1, 34-35 [164 Cal.Rptr. 1, 609 P.2d 468].) I see no good reason for requiring an objection when a prosecutor misstates to the jury the law on proving a criminal defendant's guilt beyond a reasonable doubt, a concept that lies at the heart of this nation's system of justice, but not insisting on it when, as here, a prosecutor inaccurately describes the quantum of evidence necessary to support a conviction. The dissent also states that *Griffin v. United States* (1991) 502 U.S. 46, 52-54, 58-59 [112 S.Ct. 466, 470-472, 473-474, 116 L.Ed.2d 371], *People v. Guiton* (1993) 4 Cal.4th 1116, 1121-1122, 1128-1129 [17 Cal.Rptr.2d 365, 847 P.2d 45], and *People v. Green, supra*, 27 Cal.3d 1, 65-74, establish that "when a prosecutor advances an erroneous theory of guilt that jury instructions fail to clarify, the result is legal error for which the reviewing court may reverse irrespective of a contemporaneous objection." (Dis. opn., *post*, at p. 54 , fn. 2.) These cases do not at all so hold.

Defendant may well be able to argue successfully that his counsel's failure to object to the prosecutor's argument violated his right to the effective assistance of counsel. But defendant does not argue that on appeal here. Understandably so. As this court has repeatedly said, such claims are more appropriately made in a petition for writ of habeas corpus, where any possible tactical basis for counsel's actions can be explored at an evidentiary hearing. (See, e.g., *People v. Diaz* (1992) 3 Cal.4th 495, 557-558 [11 Cal.Rptr.2d 353, 834 P.2d 1171].) Although it may be difficult to perceive a tactical basis for counsel's failure to object in this case, I see no need to decide this issue because it is not before us.

The dissenting opinion also concludes that the evidence is insufficient to support defendant's conviction. That issue too is not before us. Therefore, like the majority, I do not reach it.

For these reasons, I agree with the majority's affirmance of the judgment of the Court of Appeal.

**BROWN, J.**—I dissent.

The principles articulated in *People v. Green* (1980) 27 Cal.3d 1, 65-74 [164 Cal.Rptr. 1, 609 P.2d 468] (*Green*)[1] are not distinguishable but directly on point. Contrary to the majority's conclusion, this is not a case of prosecutorial misconduct; it is one of legal error. (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1125-1126, 1128 [17 Cal.Rptr.2d 365, 847 P.2d 45] (*Guiton*); *Griffin v. United States* (1991) 502 U.S. 46, 55, fn. 1, 58-59 [112 S.Ct. 466, 471, 474, 116 L.Ed.2d 371] (*Griffin*).) When, as here, the prosecutor premises his argument on an erroneous legal theory of guilt, the jury instructions do not clarify any possible misunderstanding, and the reviewing court cannot determine whether the jury predicated a guilty verdict on that erroneous theory, the judgment cannot stand. (*Guiton*, at p. 1128.) As I shall explain, this analysis applies, beyond cavil, to the facts before us and warrants reversal of defendant's conviction for possession of a controlled substance.

I

In *Green*, the defendant was charged, among other crimes, with simple kidnapping. The evidence suggested, and the prosecutor argued, that the asportation could be divided into three portions, including the "last 90 feet

[1]Overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 239 [83 Cal.Rptr.2d 533, 973 P.2d 512], and *People v. Hall* (1986) 41 Cal.3d 826, 834 [226 Cal.Rptr. 112, 718 P.2d 99], footnote 3.

that defendant walked [the victim] to the spot where he killed her." (*Green, supra,* 27 Cal.3d at p. 68; see *id.* at pp. 62-63.) The trial court gave the standard jury instruction, directing "that the crime is committed when the defendant moves a person . . . 'for a substantial distance, that is, a distance more than slight or trivial.' " (*Id.* at p. 68.) On appeal, this court concluded that the "latter brief movement [was] insufficient as a matter of law to support the verdict of guilt . . . ." (*Id.* at p. 67, fn. omitted; see *People v. Brown* (1974) 11 Cal.3d 784 [114 Cal.Rptr. 426, 523 P.2d 226], overruled in *People v. Martinez, supra,* 20 Cal.4th at p. 239.)

In assessing the import of its conclusion, the court began with the uncertainty whether "the jury actually based its general verdict of guilt" on this legally insufficient segment of the asportation. (*Green, supra,* 27 Cal.3d at p. 67.) The Attorney General contended that a continuous kidnapping had occurred beginning with the initial movement and ending with the murder. (*Ibid.*) The court was unpersuaded: "The fatal flaw in this 'continuous kidnapping' theory, however, is that it was simply not the theory on which the case was tried." (*Ibid.*)

The court then turned to the prosecutor's argument. Although he referenced the first two segments, the district attorney "emphasized repeatedly that the latter [90-foot] movement was itself sufficient to satisfy the 'substantial distance' requirement and hence to constitute a kidnaping. Thus he focused the jury's attention on defendant's [latter] movement of the victim . . . and stated: 'Now, that distance, 90 feet, . . . seems rather insignificant . . . , but . . . *it's a movement of substantial distance* . . . .' . . . Later the prosecutor returned to this issue and told the jury . . . '[*a*]*ny one of the three is sufficient for a kidnap* . . . *90 feet, you have to conclude that was a substantial distance if for some reason you conclude the [other two segments] were not or the other elements were not present during the portion of the move.* Now, that of course, would give you the crime of simple kidnapping. . . .' " (*Green, supra,* 27 Cal.3d at p. 68, fn. omitted, all bracketed text added.) Not only did the prosecutor emphasize the 90-foot movement as sufficient to satisfy the element of asportation, "[n]othing in the instructions, moreover, disabused the jury of this notion. The instructions . . . told the jury only that the crime is committed when the defendant moves a person . . . 'for a substantial distance . . . .' No further guidance was provided . . . ." (*Id.* at pp. 68-69; see *id.* at p. 71.)

The court found that "[i]n these circumstances the governing rule on appeal is both settled and clear: when the prosecution presents its case to the jury on alternate theories, some of which are legally correct and others legally incorrect, and the reviewing court cannot determine from the record

on which theory the ensuing general verdict of guilt rested, the conviction cannot stand." (*Green, supra*, 27 Cal.3d at p. 69; see *Griffin, supra*, 502 U.S. at pp. 52-55, 58-59 [112 S.Ct. at pp. 470-471, 474]; see also *People v. Aguilar* (1997) 16 Cal.4th 1023, 1034 [68 Cal.Rptr.2d 655, 945 P.2d 1204].) The court recognized that the record "contain[ed] evidence that could have led the jury to predicate its kidnaping verdict on the legally sufficient portion of [the] asportation. But it also contain[ed] evidence that could have led the jury to rely . . . on . . . the legally insufficient portion[] of that movement. The instructions permitted the jury to take the latter course; and the district attorney expressly urged such a verdict in his argument, at least with respect to the final 90 feet that the victim was transported. We simply cannot tell from this record which theory the jury in fact adopted." (*Green, supra*, 27 Cal.3d at p. 71; cf. *People v. Aguilar, supra*, 16 Cal.4th at p. 1036 ["That the jury here was not, in the end, invited to reach a guilty verdict by a faulty analytical path is clear from a consideration of the context of the prosecutor's summation"].)

In *Guiton, supra*, 4 Cal.4th 1116, the court expressly reaffirmed these principles. There, the defendant was charged in one count with selling or transporting cocaine, and the trial court instructed on both even though the evidence did not support a finding he sold the drug. The court upheld the conviction and distinguished *Green* as a case of legal insufficiency rather than one of evidentiary insufficiency. (See *Guiton*, at pp. 1125-1126; *Griffin, supra*, 502 U.S. at pp. 55, fn. 1, 58-59 [112 S.Ct. at pp. 471-474].) The defendant argued the distinction was " 'illusory, since judgments that are not supported by the requisite minimum of proof are invalid as a matter of law . . . . Insufficiency of proof, in other words, is legal error.' [Citation.]" (*Guiton*, at p. 1125, italics omitted.) Quoting *Griffin*, at page 59 [112 S.Ct. at page 474], the *Guiton* court explained, " 'This represents a purely semantical dispute. In one sense "legal error" includes inadequacy of evidence—namely, when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense "legal error" occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient. But in another sense—a more natural and less artful sense—the term "legal error" means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence. . . .' [Citation.]" (*Guiton*, at p. 1125.)

"The *Griffin* court thus drew a distinction between a mistake about the law, which is subject to the rule generally requiring reversal, and a mistake concerning the weight or the factual import of the evidence, which does not require reversal when another valid basis for conviction exists. . . . ' . . .

Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. . . .' " (*Guiton, supra,* 4 Cal.4th at p. 1125.) Thus, a reviewing court will " ' "negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law . . . ." ' [Citation.]" (*Id.* at pp. 1125-1126.) Accordingly, reversal is generally required in those instances "in which 'a particular theory of conviction . . . is contrary to law,' or, phrased slightly differently, cases involving a '*legally* inadequate theory' . . . [including] a case where the inadequate theory 'fails to come within the statutory definition of the crime.' [Citation.]" (*Id.* at p. 1128.)

"To analyze the *Green* facts in terms of *Griffin*, . . . a jury would be well equipped to analyze the evidence and determine whether the victim had been asported, and to determine the distance of the asportation. The jury would, however, not be equipped to determine whether, as a matter of *law*, 90 feet is insufficient. A reasonable jury, given no specific guidance regarding the required distance [citation], could have found 90 feet to be sufficient, and could have relied on that segment of asportation in its verdict. That being the case, reversal was appropriate. Nothing in *Griffin* casts doubt on the *Green* result." (*Guiton, supra,* 4 Cal.4th at p. 1128.)

## II

As explicated in *Guiton*, we have here a case of legal insufficiency requiring reversal (*Guiton, supra,* 4 Cal.4th at p. 1128): The prosecutor argued an erroneous theory of guilt and the instructions failed to correct any misunderstanding of the law he may have conveyed and on which the jury may have relied in reaching its verdict.[2] "We simply cannot tell from this record which theory the jury in fact adopted." (*Green, supra,* 27 Cal.3d at p. 71.)

---

[2]The majority and Justice Kennard thus mischaracterize defendant's claim as one of prosecutorial misconduct subject to waiver on appeal. (Maj. opn., *ante,* at pp. 43-44; conc. & dis. opn. of Kennard, J., *ante,* at pp. 50-51; cf. *Green, supra,* 27 Cal.3d at pp. 27-36 [separately addressing the defendant's claims of prosecutorial misconduct, most of which had been waived by failure to object].) As *Green, Guiton,* and *Griffin* establish, when a prosecutor advances an erroneous theory of guilt that jury instructions fail to clarify, the result is legal error for which the reviewing court may reverse irrespective of a contemporaneous objection. (See *Guiton, supra,* 4 Cal.4th at pp. 1121-1122, 1128-1129; *Green,* at pp. 65-74; see also *Griffin, supra,* 502 U.S. at pp. 52-54, 58-59 [112 S.Ct. at pp. 470-471, 473].) This situation differs qualitatively from a simple misstatement of a legal principle and thus invokes a different standard of review. (Cf. *Green,* at p. 34 [finding the defendant had waived claim of misconduct based on prosecutor's "partial misstatement of the law of reasonable doubt"].)

Significantly, the prosecutor never mentioned the elements of possession in his opening final argument. Rather, he advanced the self-described "simple" theory that one could not become under the influence of a controlled substance without possessing that substance; therefore, because the evidence showed defendant was under the influence of phencyclidine (PCP), he must be guilty of possessing it to have been in such condition. The prosecutor began with that point—"[C]ertainly the most compelling evidence is that the defendant was under the influence of PCP"—and ended with it—"So you make your decision based upon the evidence here, and I believe that the evidence here, clearly, beyond a reasonable doubt, establishes that the defendant had to have been in possession of PCP in order to get under the influence of PCP on November the 3rd . . . ."

Even a cursory review of the argument in its entirety makes plain the "evidence here" was limited to defendant's state of intoxication. In between the statements quoted above, the prosecutor discussed virtually nothing else and advanced no other theory of guilt. He recited in detail the officers' observations, including the drug recognition expert's evaluation of defendant's condition, and then posited, *"So the only evidence that you have . . .* all points to the fact that the defendant was clearly under the influence that night . . . , and in the van [where] he is . . . found sitting by the police officers, is a vial of PCP." (Italics added.) The prosecutor then told the jury that to return a guilty verdict it need not find defendant possessed the vial found in the van, the only possible basis for a conviction. "Now, you can go into your deliberation room and you can say, 'Well, gee, how do we know that was the vial . . .'? *We know he got [high on PCP] by being in possession of PCP.* How do we know [it] was the PCP [in the vial]? Maybe he had another bottle at home, or maybe he had five other bottles at home. That's not the issue. [¶] And it does not necessarily require that you all unanimously agree that it was some PCP from this vial. That is simply additional evidence that what he was under the influence [of] was clearly PCP, and in order to get under the influence, he had to possess PCP." (Italics added.) Inverting the evidentiary relationship between defendant's intoxication and the charge of possession, the prosecutor thus argued the PCP in the vial was circumstantial evidence defendant was under the influence of PCP, which was circumstantial evidence he must have possessed the drug to get under the influence, but not necessarily the PCP in the vial.

In his closing final argument, the prosecutor returned to his original thesis but with even greater emphasis. "What do we know? We know . . . Mr. Morales is wasted; okay? He is intoxicated on PCP. [¶] . . . [¶] . . . You don't get drunk unless you take in the intoxicant. *You can't take in the intoxicant if you don't have it. Very simple. Very simple deductive process.* I

can't drink beer until I'm drunk unless I have beer to drink." He again mentioned the vial found in the van, but merely to reiterate, "Now, the vial of PCP in the van . . . is certainly circumstantial evidence, that it is PCP we're talking about [that caused defendant's intoxication]." (Italics added.)

Finally, the prosecutor addressed the elements of the offense.[3] Nevertheless, he stuck fast to the theme he had already developed, arguing that each was established solely by virtue of defendant's intoxication: "And [defense] counsel adeptly says there are the elements of the offense of possession, one must exercise *control* in order to ingest the intoxicant. . . . [¶] . . . It's a little hard to get yourself loaded if you're not *aware of the presence* of what you're getting yourself loaded on. And the *nature of it*. . . . [I]f I get intoxicated on that six-pack, it's because I knew the nature of it. [¶] . . . So there has to be evidence beyond a reasonable doubt that there was a *sufficient quantity* for Mr. Morales to get high. He was high. He was intoxicated. [¶] . . . *So all of those elements are conclusively proven based upon the condition that Mr. Morales is in at the time he's found.* Very simple. Very simple process." (Italics added.)

The sum and substance of the prosecutor's argument thus urged the jury to find defendant guilty of possessing PCP based on the fact he must have used it to become intoxicated. This constituted legal error, i.e., " 'a mistake about the law.' " (*Guiton, supra,* 4 Cal.4th at p. 1125.) For more than three decades, courts have "reject[ed] the theory that circumstantial reasoning from use to possession is permitted." (*People v. Spann* (1986) 187 Cal.App.3d 400, 407 [232 Cal.Rptr. 31]; see *People v. Fein* (1971) 4 Cal.3d 747, 754 [94 Cal.Rptr. 607, 484 P.2d 583]; *People v. Sullivan* (1965) 234 Cal.App.2d 562, 565 [44 Cal.Rptr. 524]; see also *People v. Leal* (1966) 64 Cal.2d 504, 510 [50 Cal.Rptr. 777, 413 P.2d 665].) In *People v. Palaschak* (1995) 9 Cal.4th 1236, 1240-1241 [40 Cal.Rptr.2d 722, 893 P.2d 717] (*Palaschak*), the court reaffirmed this basic principle: "[E]vidence of ingestion of drugs, standing alone, should not be deemed adequate to sustain a possession charge . . . . Ingestion, whether or not accompanied by useless traces or residue, at best raises only an inference of prior possession. [¶] As stated in [*People v.*] *Sullivan, supra,* 234 Cal.App.2d at page 565, if proof of ingestion of illegal drugs were sufficient to sustain a possession charge, then every person under the influence of an illegal drug could be charged with possessing it because, logically, one who ingests a drug must have possessed it at least temporarily." (Italics omitted.)

---

[3]"The elements of the crime of unlawful possession of a controlled substance, such as PCP, are [1] [actual or constructive] dominion and control of the substance [2] in a quantity usable for consumption or sale, [3] with knowledge of its presence and [4] of its restricted dangerous drug character. Each of these elements may be established circumstantially. [Citation.]" (*People v. Camp* (1980) 104 Cal.App.3d 244, 247-248 [163 Cal.Rptr. 510].)

The court "discern[ed] no good reason why substantial evidence of past possession of [an illegal drug] (within the period of the applicable statute of limitations) should be deemed insufficient to sustain a conviction of that offense [simply because the defendant had already ingested the drug by the time of his arrest]" (*Palaschak, supra,* 9 Cal.4th at p. 1240, italics omitted), and disapproved "*broad* dictum" in *People v. Fein, supra,* 4 Cal.3d 747, and *People v. Sullivan, supra,* 234 Cal.App.2d 562, suggesting otherwise. (*Palaschak,* at p. 1241.) At the same time, however, it carefully distinguished and circumscribed its relevance to those circumstances "in which there exists sufficient direct or circumstantial evidence of past possession, over and above evidence of mere use or ingestion." (*Ibid.*) Logically, this principle applies to proof of each element as well as the charge itself. The reason for the limitation is clear: evidence of use or ingestion does not necessarily establish all the elements of criminal possession since the defendant may not have knowingly possessed an illegal drug at the time of ingestion or known of its contraband nature. (See *ibid.*; see also *id.* at p. 1242 [finding all elements of LSD possession established by direct and circumstantial evidence notwithstanding loss or destruction of the drug by ingestion].) A contrary rule may also present venue and statute of limitations problems.

As the record here attests, the prosecutor cited no "direct or circumstantial evidence of past possession, *over and above evidence of mere use or ingestion*." (*Palaschak, supra,* 9 Cal.4th at p. 1241, italics added.) The majority suggests the jury could have found defendant guilty based on inferences drawn from other evidence. The "fatal flaw" in this reasoning, however, "is that it was simply not the theory on which the case was tried." (*Green, supra,* 27 Cal.3d at p. 67.)

The prosecution's case consisted almost exclusively of the officers' testimony regarding defendant's state of intoxication and the distinctive odor of ether associated with PCP.[4] The majority notes defendant refused to submit a sample of his urine. Not only did the prosecutor fail to argue the refusal as consciousness of guilt and the trial court fail to instruct on the point, its evidentiary significance is probably negligible given the wording of the admonition, which did not reference a possible possession charge but instead indicated, "A criminal complaint charging you with *being under the influence* of a narcotic or drug may be filed against you." (Italics added.) The only other evidence the majority cites is that "[d]efendant was found, intoxicated by PCP, in a van containing a vial of the substance. His wife had gone to the police seeking help for him—presumably, help in dealing with the substance's effects." (Maj. opn., *ante,* at p. 46.) These "circumstances" merely

---

[4]The only other testimony concerned the chain of custody for the vial and evidence describing the scientific testing of the liquid in the vial.

reiterate in one respect or another the fact defendant was intoxicated on PCP. Even if such evidence were not susceptible of reasonable nonincriminatory inferences, as a matter of law it is insufficient to prove possession. (*Palaschak, supra*, 9 Cal.4th at pp. 1240-1241.)

Equally to the point, while defendant may have been found in a van containing a vial of PCP, there was no evidence of who owned the van. The vial was discovered under the driver's seat, and defendant was found on the other side sitting in the open passenger's side door. No direct evidence established who drove the van to the police station, but defendant's profound state of intoxication as well as his wife's presence and request for assistance strongly support a reasonable inference he was not the last person driving the vehicle. Nor does the record contain any indication he ever drove it. As the defense also noted, no fingerprints were taken from the van or the vial.[5]

As did the prosecutor, the majority also fails to relate any of the circumstantial evidence it relies on to the elements of the charge. Guilt is not simply a matter of being in proximity to a controlled substance. Just as intoxication alone is insufficient, "proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession." (*People v. Redrick* (1961) 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255].) At the same time, primary reliance on defendant's state of intoxication tends to undercut the argument he knew of the vial's presence. The majority also cites no other fact from which a reasonable jury could find that the vial contained a usable quantity of PCP. Given the paltry evidentiary record, the jury "had substantial incentives to take the easier path urged by the district attorney" (*Green, supra*, 27 Cal.3d at p. 73), i.e., to predicate its finding of possession solely on defendant's intoxication, a "[v]ery simple deductive process" as he described it, rather than to guess whether all the elements were satisfied by other circumstantial evidence.

Contrary to the majority's analysis, "[n]othing in the instructions, moreover, disabused the jury of this notion." (*Green, supra*, 27 Cal.3d at p. 68.) The trial court instructed in standard terms: "In order to prove [possession of a controlled substance], each of the following elements must be proved: One, a person exercised control or the right to control a certain controlled

---

[5]Considering the totality of this evidence, even in the light most favorable to the judgment below, I find it fails to "disclose[] substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The prosecution made no serious attempt, apart from relying on defendant's state of intoxication, to establish the elements of possession of a controlled substance according to the foregoing standard.

substance; two, such person had knowledge of its presence; three, such person had knowledge of its nature as a controlled substance; and, four, the substance was in an amount sufficient to be used as a controlled substance." "No further guidance was provided" on the evidentiary significance of intoxication. (*Green*, at p. 68.) While the "instructions themselves did not [expressly] permit a conviction solely on evidence of intoxication" (maj. opn., *ante*, at p. 47), such technical accuracy did not cure the fatal infection caused by the prosecutor's erroneous theory of guilt.[6]

Nor did any of the trial court's routine admonitions assist in a proper understanding of the law as to the relationship between intoxication and possession. Prior to the testimony, the court instructed, "You must accept and follow the law as I state it to you, whether or not you agree with the law. If anything concerning the law said by the attorneys in their arguments, or at any other time during the trial, *conflicts* with my instructions on the law, you must follow my instructions and disregard what they say regarding the law." (Italics added.) As previously discussed, the court's enumeration of the elements of possession in no way conflicted with the prosecutor's assertion that intoxication provided the requisite proof. (See *Green, supra,* 27 Cal.3d at p. 68.) As the court in *Guiton* expressly noted, a "reasonable jury, given no specific guidance regarding" applicable principles of law, could have relied on findings consistent with the facts but inconsistent with the law in reaching its verdict. (*Guiton, supra,* 4 Cal.4th at p. 1128.) This record affords no basis for concluding otherwise. (Cf. *id.* at p. 1130 [legal error under *Green* may be harmless if "it is possible to determine from other portions of the verdict that the jury necessarily found the defendant guilty on a proper theory"].)

The circumstantial evidence instructions also did not conflict with the prosecutor's argument.[7] The prosecutor argued that "all of those elements [of possession] are conclusively proven based upon the condition that Mr.

---

[6]*Compounding the misimpression conveyed by the bare-bones instruction, the prosecutor told the jury it had the "duty" to "determine what the facts are in kind of a clinical fashion, [and] apply the law that the judge gives you in an absolutely clinical fashion. [¶] . . . You just take that law, apply it to the facts you found and you make your determination." In sum, he told the jury to "go in and judge this evidence solely on the law." "The facts" as presented, however, related virtually exclusively to defendant's PCP intoxication, which the prosecutor erroneously argued was sufficient under "the law" as given by the judge. (See Green, supra, 27 Cal.3d at p. 68.)*

[7]Regarding circumstantial evidence, the court instructed in part, "a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only, one, consistent with the theory that the defendant is guilty of a crime, but, two, cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to

Morales is in at the time he's found. Very simple. Very simple process." A reasonable jury assessing the legal import of the circumstantial evidence instructions in light of that argument would have no reason to conclude that the prosecutor had misstated the law or that it could not properly convict solely on the basis of defendant's "condition."

Given the totality of the record, this case comes squarely within the rule "of a 'legally inadequate theory' generally requiring reversal." (*Guiton*, *supra*, 4 Cal.4th at p. 1128.) To paraphrase *Guiton*: At issue was whether intoxication was sufficient to satisfy the elements, or the "statutory definition," of possession. There was no insufficiency of proof in the sense that there clearly was evidence from which a jury could find that defendant was intoxicated on PCP. Instead, we have held that intoxication alone is "*legally insufficient.*" A jury would be well equipped to analyze the evidence and determine whether defendant was under the influence of PCP. The jury would, however, not be equipped to determine whether, as a matter of *law*, such intoxication is insufficient to prove possession. A reasonable jury, given no specific guidance regarding the relationship between the two, could have found intoxication alone to be sufficient, and could have relied on that fact in its verdict. (*Ibid.*)

The relevant inquiry is not, as the majority implies (see maj. opn., *ante*, at pp. 43-44), whether the trial court rather than the prosecutor presented a legally incorrect theory. Reversal is required when, as here, "the prosecution presents its case to the jury on alternate theories, some of which are . . . legally incorrect" (*Green, supra*, 27 Cal.3d at p. 69); "[n]othing in the instructions . . . disabused the jury of this [erroneous] notion" (*id.* at p. 68); and "the reviewing court cannot determine from the record on which theory the ensuing general verdict of guilt rested . . . ." (*Id.* at p. 69; see *Guiton*, *supra*, 4 Cal.4th at pp. 1128-1129; *Griffin, supra*, 502 U.S. at pp. 58-59 [112 S.Ct. at p. 474].) The actual source of the error is not controlling, particularly when, as here, the error will commonly arise from a combination of factors. (See *Green*, at p. 68.)

The inquiry is also not as to the sufficiency of the evidence. The critical question is whether the reviewing court can determine if the jury returned

---

establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his being not guilty, you must adopt that interpretation which points to the defendant's being not guilty and reject that interpretation which points to his guilt. [¶] If, on the other hand, one interpretation of such evidence appears to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

" ' "a verdict that, while supported by [the] evidence, may have been based on an erroneous view of the law . . . ." ' " (*Guiton, supra,* 4 Cal.4th at pp. 1125-1126; see *id.* at pp. 1128-1129; *Griffin, supra,* 502 U.S. at p. 59 [112 S.Ct. at p. 474].) Thus, even if the evidence were sufficient (see, *ante,* fn. 6), that determination would be irrelevant to resolving defendant's claim of legal error.

## III

The prosecutor argued that "all of those elements [of possession of PCP] are conclusively proven based upon the condition that Mr. Morales is in at the time he's found." Plainly, this was " 'a particular theory of conviction . . . contrary to law,' " i.e., a " '*legally* inadequate theory' " of guilt (*Guiton, supra,* 4 Cal.4th at p. 1128), yet he exhorted the jury to apply the law to the facts as he erroneously described. Neither the tenuous state of the evidence nor the unadorned instructions led the jury away from this misperception. I not only "cannot determine from the record on which theory the ensuing general verdict of guilt rested" (*Green, supra,* 27 Cal.3d at p. 69), I cannot discern that any correct alternative was ever presented to this jury; and thus "the conviction cannot stand." (*Ibid.*) Accordingly, I would reverse the judgment of the Court of Appeal. Since I find the evidence insufficient, I would also preclude retrial. (See *Burks v. United States* (1978) 437 U.S. 1, 11 [98 S.Ct. 2141, 2147, 57 L.Ed.2d 1].)

Werdegar, J., concurred.