Filed 7/12/13  P. v. Liwanag CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LYLE AARON LIWANAG, <br><br> Defendant and Appellant. | G046823 <br><br> (Super. Ct. No. 10NF1809) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Daniel J. Didier, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed as modified.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Lyle Aaron Liwanag of committing multiple lewd acts on two girls under age 14 and statutory rape of another girl. It found true allegations he committed a sexual offense against more than one victim within the meaning of the "One Strike" law. (Pen. Code, § 667.61, subds. (b),(e)(5).) The trial court sentenced Liwanag to a total term of 15 years to life.

Liwanag argues the prosecutor committed misconduct during closing argument. He also contends the trial court failed to award 50 days conduct credits. The Attorney General concedes the credits issue, and we modify the judgment to reflect the proper award of presentence custody credits. In all other respects, the judgment is affirmed.

FACTS

Liwanag does not challenge the sufficiency of the evidence so the facts compromising the offenses may be briefly stated.

*Lewd Acts*

In 2009, 10-year-old A.M. lived with her grandparents, her mother, and her uncle in a home in Anaheim. Liwanag and A.M.'s uncle were close friends, and he was a frequent visitor to the home. In October, Liwanag came to visit A.M.'s uncle. Sometime during the visit, he came into A.M.'s bedroom, closed the door, and told her he was going to give her a massage. He started to massage A.M.'s shoulders over her pajamas, but then put his hand under her pajama bottoms and underwear. He first touched and then penetrated her vagina with his index finger. Confused by Liwanag's conduct, A.M. did not tell anyone what had happened.

2

About a month later, Liwanag approached A.M. while she was in her grandparent's room. A.M. was sitting in a chair in front of a computer when Liwanag came into the room and told her he wanted to use the chair. A.M. surrendered the chair and sat down on the floor, but Liwanag directed her to sit on the chair with him. When she did so, he again massaged her shoulders, slipped his hand under her clothing, touched and penetrated her vagina and touched her breasts. When A.M. asked what he was doing, Liwanag said, "Just chilling."

In March or April 2010, A.M.'s 13-year-old cousin, J.D. came for a visit. During the visit, Liwanag, J.D., and A.M. were together in A.M.'s uncle's bedroom. While J.D. and Liwanag were lying on the bed, Liwanag put his palm on J.D.'s groin, just above her vagina. J.D. pushed his hand away and walked out of the room. Later that night, Liwanag joined J.D. and A.M. in bed while they watched television. At one point, he touched J.D.'s vaginal area over her clothing. When J.D. asked him to move his hand, Liwanag moved his hand, got up from the bed, and left the room.

In May, Liwanag interrupted A.M. while she was working on her homework. He sat next to her at the kitchen table and massaged her shoulders. He again reached inside her clothing and touched her vagina. This time A.M. told her uncle what had happened. Her uncle went to Liwanag's workplace, confronted him, and asked if A.M.'s report was true. Liwanag replied, "It's complicated." After further questioning, Liwanag admitted the conduct, and A.M.'s family contacted police.

*Statutory Rape*

Liwanag met B.H. online in 2008 when she was about 15 years old. Although he was 21 years old at the time, Liwanag told B.H. he was only 19 years old. In February 2010, Liwanag traveled to B.H.'s parents' home in Washington, stayed with the family, and had oral sex with B.H. In May, B.H. came to visit Liwanag in California.

They spent three days at an Anaheim hotel where they had sexual intercourse. Liwanag was arrested during this visit.

After his arrest, Liwanag waived his *Miranda* rights (*Miranda v. Arizona* (1966) 384 U.S. 436) and talked to a detective with the Anaheim Police Department. He admitted lying to B.H. about his age, having sexual contact with her when he visited her family's home, and have sexual intercourse when she came to Orange County. He admitted touching A.M.'s vagina, but initially denied any digital penetration. Later, he said he was not sure whether he digitally penetrated her, and claimed he stopped when she asked him to do so. He said he "probably" touched her breasts, and admitted he touched her buttocks over and under her clothing.

As for J.D., Liwanag said he once put his hand near her vagina, but said he was holding her hand and trying to get in a comfortable position. He claimed he did not intend to touch her private parts.

At trial, Liwanag admitted he touched A.M. three times and had sexual intercourse with B.H. He denied touching J.D.'s vagina while they were lying on a bed together, and denied he ever was on a bed with J.D. and A.M. In essence, he denied any unlawful contact with J.D.

*Closing Argument*

During closing argument, defense counsel stated, "Well, I don't envy you; that's your job. But remember the presumption of innocence, and that's what we went through the first day. And I went through that several times, and God knows it must have been very boring for you guys having to hear it over and over and over again, and I apologize about that, but that's something that we have to stress as defense counsel." Counsel conceded the evidence proved his client committed lewd acts with A.M. and

4

committed statutory rape with B.H., but denied any improper contact with J.D., asserting her testimony was the result of someone succumbing to the power of suggestion.

The prosecutor responded to the defense attorney's indirect suggestion J.D. lied about the two incidents involving her, and stated, "Presumption of innocence is over, for as much talk as we've heard about it. You've heard all the evidence, you've heard all the arguments. As soon as I shut up, we're done with everything you're going to hear in this case. That presumption is done. You don't have to presume anything because you've heard everything you need to hear already to convict the defendant. This is all stuff we talked about already. I'm not going to keep going through it. [¶] Again, your job in this is to come back and give us the truth . . . I'm asking you to give us every little detail and to make sure that every part of that story gets told, that you don't ignore parts of that story just because the defense was willing to live with the other ones . . . . You don't leave out parts of that story and say, hey, [J.D.], sorry, we believed you, we know he did it, but we kind of wanted to get out of there. You make sure every single part of that story is told and that he's held accountable for every single thing that he did."

## DISCUSSION

Liwanag points to the prosecutor's statement, "the presumption of innocence is over" and argues the prosecutor committed misconduct by misstating the law. The Attorney General asserts Liwanag forfeited the issue by failing to object at trial.

On appeal, a defendant may not complain of prosecutorial misconduct unless he objected to the misconduct in the court below and asked that the jury be admonished to disregard the impropriety. (*People v. Cunningham* (2001) 25 Cal.4th 926, 1000.) If no objection was made, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct. (*Id.* at pp. 1000-1001.)

5

In this case, any harm caused by the alleged misconduct could have easily been cured by an appropriate admonition. However, Liwanag made no objection to the prosecutor's remarks and thus has waived his claim. "His appeal is foreclosed on that basis." (*People v. Morales* (2001) 25 Cal.4th 34, 44.) Moreover, even if the claim had not been waived, it would lack merit.

"The standards under which we evaluate prosecutorial misconduct may be summarized as follows. A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. [Citation.]" (*People v. Morales*, *supra*, 25 Cal.4th at p. 44.)

Applying these standards here, when viewed in the context of defense counsel's argument and the entire rebuttal argument, the prosecutor's comment cannot reasonably be construed as urging the jury to convict before deliberating. While any prosecutor who explains the presumption of innocence and the standard of proof beyond a reasonable doubt to a jury in a way that blurs either principle is courting reversible error, in this case there is no "reasonable likelihood that the jury construed or applied . . . the complained-of remarks" in the manner urged by Liwanag. (*People v. Morales*, *supra*, 25 Cal.4th at p. 44.)

*People v. Goldberg* (1984) 161 Cal.App.3d 170 (*Goldberg*) is particularly instructive. In *Goldberg*, the prosecutor argued, "'And before this trial started, you were told there is a presumption of innocence, and that is true, but once the evidence is

complete, once you've heard this case, once the case has been proven to you–and that's the stage we're at now–the case has been proved to you beyond any reasonable doubt. I mean, it's overwhelming. *There is no more presumption of innocence*.'" (*Id.* at p. 189, original italics.)

On appeal, defendant argued the prosecutor committed misconduct by stating the presumption of innocence no longer applied. (*People v. Goldberg*, *supra*, 161 Cal.App.3d at p. 189.) However, the appellate court looked to the trial court's instructions and concluded these instructions cured any prejudice. (*Id*. at pp. 189-190.) "Once an otherwise properly instructed jury is told that the presumption of innocence obtains until guilt is proven, it is obvious that the jury cannot find the defendant guilty until and unless *they*, as the fact-finding body, conclude guilt was proven beyond a reasonable doubt." (*Ibid*.)

The same result should obtain in this case and for the same reasons. Here, as in *Goldberg*, the trial court properly instructed the jury on the presumption of innocence and the prosecution's burden of proof (CALCRIM Nos. 103, 220), and told the jury any conflict between the attorney's comments and the court's instructions was to be resolved in favor of the court's instructions (CALCRIM No. 104). Under these circumstances, there is no reasonable likelihood the prosecutor's comments affected the jury's deliberations in this case.

Liwanag's reliance on *Mahorney v. Wallman* (10th Cir. 1990) 917 F.2d 469, is misplaced. In *Mahorney*, the prosecutor misstated the presumption of innocence during voir dire and closing argument. On each occasion, defense counsel objected to the prosecutor's statements, but the trial court immediately overruled the objection in the jury's presence, thereby placing an "official imprimatur" on the prosecutor's misstatements. (*Id.* at p. 473.) In this case, unlike *Mahorney*, the prosecutor's misstatement was much less significant, and defense counsel likely made a tactical decision to remain silent in an effort to avoid drawing attention to it.

7

Finally, even if there had been misconduct and no waiver, Liwanag's related ineffective assistance of counsel claim would fail because he cannot prove prejudice. "To establish ineffective assistance of counsel under either the federal or state guarantee, a defendant must show that counsel's representation fell below on objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) In this case, for all of the reasons we have discussed there is simply no reasonable probability that, but for defense counsel's alleged failings, the result would have been more favorable to Liwanag.

DISPOSITION

The judgment is modified to reflect an award of 50 days presentence conduct credits, plus 339 actual days served for a total of 389 days of presentence custody credits. The clerk of the superior court is directed to amend the abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.