Filed 6/2/15  P. v. MacKenzie CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICTOR EDWARD MACKENZIE,<br><br>    Defendant and Appellant. | D066267<br><br><br>(Super. Ct. Nos. SCE319222 & SCE333933) |

APPEAL from a judgment of the Superior Court of San Diego County, Lantz Lewis, Judge.  Affirmed.

Elisabeth A. Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Victor Edward Mackenzie for driving under the influence (DUI) of alcohol, with a blood alcohol level of .08 percent or more, causing injury to another. (Veh. Code, § 23153, subds. (a) & (b).) He had two prior felony convictions for DUI.

Mackenzie appeals contending the trial court erred when it denied his motion for new trial based on two instances of prosecutorial misconduct. He asserts the prosecutor (1) elicited an improper conclusion from a paramedic, and (2) made prejudicial references to his prior convictions in closing argument. He also contends ineffective assistance of counsel based on failing to object to the prosecutor vouching for an officer's credibility. We reject Mackenzie's contentions and affirm.

FACTS

The primary factual dispute in this case concerned who was driving the car—Mackenzie, or his friend, Deborah White—when it collided with a freeway exit sign and rolled over. The following facts provide context for our discussion.

Prior to March 2012, White had not seen Mackenzie for about five years. On the night of the collision, she saw him outside a bar where they both happened to be hanging out. White testified that she had about three drinks over the course of three or four hours. Mackenzie testified that he was drinking "shots" of alcohol every three to four minutes. White needed a ride to a friend's house and asked Mackenzie for one.

They dispute what happened next. According to White, he agreed to give her a ride, she sat on the passenger side, she put her seat belt with a shoulder strap on, and he drove the car. According to Mackenzie, he initially declined to give her a ride, but

2

eventually agreed that she could drive his car, and he would spend the night at their destination.

The car never arrived at its destination. A witness who called 911 observed the car swerving all over the road, going at erratic speeds, and rolling over, but the witness could not see who was driving. White testified that right after the collision, Mackenzie said to her, "I'll give you $20,000 if you say that you were driving, because I have other DUI's and I'll go to prison, I'll go to jail." White responded, "No. I don't drink and drive. I'm not going to jail for you." She further testified that prior to Mackenzie's statement, she did not know he had DUI's and, before that night, she had not talked to him for five years.

A paramedic responded to the collision scene. In a report prepared soon after treating Mackenzie, the paramedic first noted that his patient: (1) did not want to disclose whether he was the driver or if he was restrained (by a seat belt), (2) denied drinking or doing drugs, and (3) refused to talk any further. The paramedic's report also contained a subsequent observation that Mackenzie had a strong odor of alcohol on his breath.

California Highway Patrol Officer Jared Grieshaber, who has training and years of experience in investigating possible DUI's, also responded to the collision. He first contacted White on the freeway shoulder; she was calm, cooperative and did not smell overwhelmingly of alcohol. In the officer's experience and training with rollover collisions, a seat belt helps the passenger stay in the vehicle and will leave a mark. He checked both of White's shoulders and observed she had a red mark on her right shoulder, consistent with wearing a shoulder strap in the passenger seat.

3

Officer Grieshaber observed Mackenzie smelled overwhelmingly of alcohol, his eyes were red, and his speech thick and slurred. He refused to complete a vision field sobriety test and a breath alcohol test. In the ambulance, Officer Grieshaber asked Mackenzie where the car keys were located, and Mackenzie immediately replied that they were "in the ignition," which the officer believed only the actual driver would unhesitatingly know. Then, while Officer Grieshaber waited outside Mackenzie's hospital room (an area separated by a "shower curtain" divider), he overheard Mackenzie ask a nurse how Deborah White was doing. The nurse asked, "Well, who is Deborah White?" to which Mackenzie responded, "My passenger." Officer Grieshaber did not write down the nurse's name because he had personally heard the statement. Based on his investigation, the officer believed Mackenzie was the driver and arrested him for suspicion of a DUI.

## DISCUSSION

## I

### *Motion for New Trial*

Mackenzie contends there were two instances of prosecutorial misconduct for which he should have been granted a new trial. The People respond that neither of these instances amounted to prosecutorial misconduct and, regardless, any error was harmless. " 'We review a trial court's ruling on a motion for a new trial under a deferential abuse-of-discretion standard.' " (*People v. Thompson* (2010) 49 Cal.4th 79, 140.) We will not disturb the court's decision on a motion for new trial based on prosecutorial misconduct unless it is " 'plainly wrong.' " (*People v. Hardy* (1992) 2 Cal.4th 86, 213.)

4

Prosecutorial misconduct involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. (*People v. Morales* (2001) 25 Cal.4th 34, 44; *People v. Ayala* (2000) 23 Cal.4th 225, 284.) "The ultimate question to be decided is, had the prosecutor refrained from the misconduct, is it reasonably probable that a result more favorable to the defendant would have occurred." (*People v. Haskett*, (1982) 30 Cal.3d 841, 866.) "In evaluating a claim of prejudicial misconduct based upon a prosecutor's comments to the jury, we decide whether there is a reasonable possibility that the jury construed or applied the prosecutor's comments in an objectionable manner." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1019; see *People v. Williams* (2006) 40 Cal.4th 287, 323 [trial court did not abuse discretion in denying mistrial because prosecutor's inappropriate behavior was not prejudicial].)

First, Mackenzie asserts the prosecutor elicited inadmissible testimony from the paramedic, and the court's curative actions could not undo the harm. At a pretrial evidentiary hearing, Mackenzie sought to exclude a conclusion from the paramedic's report: "Patient was the driver of the vehicle protected by no safety restraints." The paramedic had no independent recollection of the night's events and would not be able to explain how he reached the conclusion. The People stated that it would only introduce portions of the report reflecting firsthand observations and Mackenzie's statements to the paramedic.

On direct examination, the prosecutor asked the paramedic: "In your report, did you record whether or not Victor Mackenzie said he was the driver of the vehicle?" Even though the prosecutor had highlighted specific portions of the report for him to read not

5

including the conclusion statement, the paramedic stated: "I guess down here it does say, 'Patient was the driver of the vehicle, protected by no safety restraints.' " In response to defense counsel's objection, the trial court instructed the jury:

> "[D]isregard totally, strike it from your notes what this witness just said. Disregard it totally. I know it seems artificial that I'm unringing the bell. I'll be explaining to you later in the jury instruction that often times things are said that the court strikes and you simply may not consider them. [¶] We are going to start over again."

Recommencing, the paramedic correctly read from his report that Mackenzie "is not wanting to disclose if he was the driver or if he was restrained." A little while later prior to cross-examination, the court again admonished the jury:

> "[T]he reason I've become kind of upset is we are not allowing opinions or conclusions in this trial as to who was the driver of the vehicle and what this witness initially read was simply conclusion and opinion. That is not permissible. It's stricken. Don't regard it. What his testimony now is what he just read from his report."

In denying Mackenzie's motion for a new trial, the court found the prosecutor did not intentionally elicit the paramedic's conclusion on driver identity, the paramedic volunteered it after being interrupted, it was obvious to the jury that the paramedic had not witnessed Mackenzie driving, and the court had immediately instructed the jury to disregard the conclusion. The court found no prosecutorial misconduct, and Mackenzie was not deprived of a fair trial. We find there was no abuse of discretion. (See *People v. Williams, supra*, 40 Cal.4th at p. 323 [trial court is in the "best position" to evaluate possible prejudice]; see also *People v. Williams* (2009) 170 Cal.App.4th 587, 635 ["In the absence of evidence to the contrary, we presume the jury understood and followed the

6

court's instructions."].) The trial court was able to gauge the prosecutor's intentions, the effect of the paramedic's statement, and the jury's ability to disregard it, and found that nothing justified a new trial. On this record, we agree.

Second, Mackenzie asserts the prosecutor improperly raised his prior convictions in closing arguments to support a propensity to commit the same crime. The prosecutor argued:

> "Ladies and gentlemen, someone was driving that vehicle that night. Somebody got behind the wheel and put the lives of a lot of people in danger, including the passenger. [¶] . . . [¶] And it comes down to who do you believe. Do you believe the defendant, who was evasive with medical personnel, denied drinking, has every motive in this case to lie; . . . offered the victim $20,000 to take the blame and she wouldn't. Someone who has done this in the past."

The prosecutor was stopped at this point, and the court admonished the jury to "disregard that argument" and "you cannot use [prior convictions] for propensity to commit a crime. [T]he fact of the prior convictions has no bearing on your decision in terms of 'he did it once, he did it again.' "

The court denied Mackenzie's motion for a new trial, finding that the prosecutor's comment—"someone who has done this in the past"—was not designed to go toward propensity, but was directed instead to Mackenzie's credibility given that his past felonies supported a motive to lie (to avoid prison). Moreover, the court had quickly sustained defendant's objection in the event the prosecutor's comment could be misconstrued. In context, we find there was no reasonable possibility the prosecutor's brief comment would be improperly used since the People emphasized that the jury must decide who to believe, and the jury could consider Mackenzie's prior felony convictions to evaluate his

7

credibility. There was no prosecutorial misconduct, and our review of the record satisfies us that the court was well within its discretion to deny Mackenzie's motion for a new trial.

II

*Ineffective Assistance of Counsel Based on Vouching*

Mackenzie contends he was deprived of effective assistance of counsel because his trial attorney failed to object to the prosecutor "vouching" for Officer Grieshaber's credibility. During closing argument, the People argued:

> "[T]he officer has no reason to lie. He has no reason to risk his job over a statement he overheard. And there was no need for him to take down [the nurse's] name when he overheard the statement. He's an officer. He's credible. And he was a witness to the statement himself."

"A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record. [Citations.] Nor is a prosecutor permitted to place the prestige of her office behind a witness by offering the impression that she has taken steps to assure a witness's truthfulness at trial. [Citation.] However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the 'facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief,' her comments cannot be characterized as improper vouching." (*People v. Frye* (1998) 18 Cal.4th 894, 971.)

Here, the prosecutor did not refer to external evidence or use her position to boost Officer Grieshaber's credibility. Her closing argument was firmly supported by facts in

8

the record and reasonably drawn inferences—the officer's years of experience and training, steps he took to investigate the collision, and how he personally overheard Mackenzie's "my passenger" statement and thus did not feel the need to collect the nurse's name and contact information.  Because we conclude there was no vouching, failure to object could not constitute ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


O'ROURKE, J.

9