Filed 3/19/21  P. v. Soltero CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B302522 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA086162) |
| v. | |
| ABRAHAM SOLTERO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Affirmed.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Abraham Soltero appeals from a judgment entered after he pleaded no contest to possession of a firearm by a felon with a gang enhancement allegation, and a jury found him guilty of first degree murder and found firearm and gang enhancement allegations to be true as to the murder. The trial court sentenced him to 50 years to life in prison. He contends the trial court erred in excluding evidence of the victim's 20-year-old misdemeanor conviction for sexual battery, which he sought to introduce at trial to show the victim's character for violence. He also contends the prosecutor committed prejudicial misconduct during closing argument by misstating the law regarding premeditation and deliberation, and his trial counsel rendered ineffective assistance in not objecting to the argument. Rejecting Soltero's contentions, we affirm the judgment.

## BACKGROUND

### I. Prosecution Case

On June 2, 2017, the date of the shooting, Richard Aukschun, the victim, was working at an automobile repair shop. He had been released from jail recently, and the owner of the shop wanted to help him by hiring him for miscellaneous jobs so he could earn money to buy food.

Artur Gukasyan, a witness who testified at trial, also worked at the automobile repair shop. While test-driving a customer's car between 2:00 and 2:30 p.m. on June 2, 2017, he observed defendant Soltero writing graffiti on the shop's wall. As Gukasyan sat inside the car at a red light, he called out to Soltero, " 'Are you having fun?' " Soltero responded by making a hand gesture, using both hands. Gukasyan was unfamiliar with the gesture. When the light turned green, Gukasyan turned and pulled the customer's car into the shop. A video camera in Gukasyan's personal car, which was parked at the shop, recorded

2

this encounter, and the prosecutor played the recording for the jury.

Joseph Miconi, a witness who testified at trial, was also working at the automobile repair shop on June 2, 2017. He observed Aukschun outside the shop talking to a Latino man who was holding two cans of spray paint. He heard Aukschun tell the man, " 'You're coming by my work and fucking up my job.' " Then, Aukschun and the man began speaking in Spanish, and Miconi could not understand what they were saying. Miconi told Aukschun, " 'Let's go. I need some help [in the shop].' " Miconi saw Aukschun and the man shake hands, so Miconi believed "everything [the argument between them] was done." Miconi and Aukschun walked back into the shop and returned to working on a car.

At 2:44 p.m. on June 2, 2017, Hagop Fesstekjian, the brother-in-law of the shop's owner, received two phone calls from Aukschun. Fesstekjian recorded the calls, as was his general practice, and the prosecutor played the audio for the jury. During the first call, Aukschun told Fesstekjian: "Edgar's homeboy just came through this fucken parking lot walking with a spray can and spray painted the barrio all over the side of the fucken building on the front street. And I got into his ass, homeboy." Fesstekjian testified that Edgar was the manager of a storage business. Fesstekjian allowed Aukschun to sleep at the storage shed he rented from that business.

The first call continued with Aukschun telling Fesstekjian: "And he -- he said -- he still was trying to spray paint on the fucken walls. He goes, you know who I am, you know who Edgar is . . .? He brought a car here yesterday . . ., this, this, and that. Causing all kinds of fucken drama, he's drunk as fuck, all high

3

and shit with a spray can spray painting all over the fucken side of the building on the main street." Aukschun suggested Fesstekjian "call Edgar to deal with it." Fesstekjian said he would. The first call ended, and then Aukschun called back to tell Fesstekjian the name of the person writing graffiti was "Suspect."

During his testimony, Fesstekjian described Aukschun as follows: "He was a very hyper guy. If he talks, he talks fast, and, if he walks, he walks fast. He talks with a lot of voice, not, like, soft voice. So when somebody -- someone meets him, it's [*sic*] intimidated and excited."

After Aukschun made the two phone calls, Miconi and the shop owner saw Aukschun run into and through the shop. According to the shop owner, Aukschun appeared to be "running very scared." Soltero, who was holding a gun, was chasing Aukschun. Aukschun, who was unarmed, ran into a storage room. The shop owner and Miconi saw Soltero stand at the door to the storage room, point his gun at Aukschun, and fire, killing Aukschun.[1] Soltero then pointed his gun at the shop owner and pulled the trigger. The gun jammed. As Soltero ran out of the shop, Miconi kicked him from behind, but Soltero kept running.

The prosecutor played for the jury surveillance video taken outside the shop. The video showed (1) the encounter between Aukschun and Soltero outside the shop; (2) Soltero leaving the area; (3) Soltero returning several minutes later; and (4) Soltero running away from the shop.

---

[1] When police officers inspected Aukschun's body a few days after the shooting, they found no scratches or defensive wounds on him.

The prosecution also presented evidence demonstrating Soltero was a member of the Logan Heights criminal street gang with the moniker "Suspect," and the automotive repair shop was located in the gang's territory. The prosecution's gang expert opined that a hypothetical shooting committed under the circumstances present here would benefit the gang.

## II.    Defense Case

The parties stipulated that Aukschun had methamphetamine in his system at the time of his death, according to a toxicology report. A pharmacist, who testified at trial, opined that based on the toxicology report, Aukschun had used methamphetamine sometime in the day before the shooting, and he would have been under the influence of methamphetamine at the time of the incident. The pharmacist also testified that methamphetamine could cause a person to act unpredictably and violently.

## III.    Verdicts and Sentence

During trial, Soltero pleaded no contest to possession of a firearm by a felon (Pen. Code, § 29800) with a gang enhancement (Pen. Code, § 186.22, subd. (b)). The jury found him guilty of first degree murder (Pen. Code, § 187, subd. (a)) and found firearm use (Pen. Code, § 12022.53, subds. (b)-(d)) and gang enhancement allegations to be true.

The trial court sentenced Soltero to 50 years to life in prison: 25 years to life for murder plus 25 years to life for the firearm enhancement. The trial court imposed and stayed the sentence for possession of a firearm by a felon.

5

## DISCUSSION

### I.    Exclusion of Evidence of Victim's 20-Year-Old Misdemeanor Conviction for Sexual Battery

Soltero contends the trial court abused its discretion under state law and violated his federal constitutional rights to due process and to present a defense when it excluded evidence of the victim's 20-year-old misdemeanor conviction for sexual battery.

#### A.    Proceedings below

At a pretrial hearing, the prosecution moved to exclude evidence of the victim's May 1996 misdemeanor conviction for sexual battery. The prosecutor informed the trial court the victim also had misdemeanor convictions in 2006 and 2015 for failing to register as a sex offender. The prosecutor argued the misdemeanor sexual battery conviction was not "relevant at all as to any of the interactions between the defendant and the . . . victim and would simply inflame the jury, if they knew that he was a sex . . . offender.

The trial court inquired whether the defense sought to introduce evidence of the 1996 sexual battery conviction. Defense counsel responded: "Well, since we don't know what the interaction between them [Soltero and the victim] was, we don't know the nature of their -- what they were talking about, I do think that it is potentially relevant. And it's a sexual battery conviction." The prosecutor replied: "Even if there was some type of interaction, I don't understand how it would be at all relevant, the fact that he was a sex offender or a -- or he had committed sexual battery back in 1995 [*sic*], and I think that, in order for that to somehow become relevant, there would have to be evidence presented that this somehow -- that there was some type of nexus between that; otherwise, it's pure speculation."

6

Defense counsel stated: "I'll just submit on the fact that I do believe that [the victim] -- that his convictions and his status as a sex offender are relevant to -- to the person that he was." Defense counsel added, "the court could give a limiting instruction that -- and let the jury know what they can and cannot use that for, the information for."

The trial court granted the prosecution's request to exclude the evidence, explaining: "[H]is character evidence -- I just don't see that that's character evidence that's highly relevant. It doesn't really go to – well, I mean, sexual battery doesn't go to the violent nature of the alleged victim, but, more importantly, I think it is remote. I think that failure-to-register convictions are just not terribly relevant, other than in the remoteness analysis. We're talking over 20 years' conviction [*sic*], occurring over 20 years ago, and it's a misdemeanor, and given the nature of the conviction, I just think that any possible probative value is, in my view, at this point -- is highly outweighed by any potential undue prejudice for the jury hearing that information. So I'm inclined not to allow it. [¶] That's without prejudice. As with every ruling I make, if it comes up during the course of trial, if counsel want to have the court reconsider something, just bring it to my attention, outside the presence of the jurors. But I'm not inclined to allow that at this point." Defense counsel did not revisit the issue.

Soltero's theory of the case, as presented to the jury, was that he was guilty of voluntary manslaughter, not first degree murder, because he killed the victim as a result of sudden quarrel or in the heat of passion after "verbal provocation" (the argument outside the shop).

## B. Applicable law and analysis

Under Evidence Code section 1101, subdivision (a),[2] "evidence of a person's character or a trait of his or character . . . is inadmissible when offered to prove his or her conduct on a specified occasion." There are exceptions to this general rule. As pertinent here, section 1103, subdivision (a)(1) provides that in "a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence" is "[o]ffered by the defendant to prove conduct of the victim in conformity with the character or trait of character." Where the defendant's theory of the case is that the victim's "violent character was circumstantial evidence of how [the victim] acted at the scene," the defendant need not show he was aware of the victim's prior violent conduct. (*People v. DelRio* (2020) 54 Cal.App.5th 47, 55.)

The trial court may exclude evidence that is admissible under section 1103 pursuant to "section 352 if admitting the evidence would have confused the issues at trial, unduly consumed time, or been more prejudicial than probative.[3] [Citations.] The trial court must always perform its gate keeping

---

[2] Further undesignated statutory references are to the Evidence Code.

[3] Under section 352, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

function pursuant to [section] 350 to exclude evidence that is irrelevant." (*People v. Gutierrez* (2009) 45 Cal.4th 789, 827-828.) We review the trial court's exclusion of section 1103 character evidence for abuse of discretion. (*People v. DelRio, supra*, 54 Cal.App.5th at p. 53.)

Soltero contends the trial court abused its discretion under state law and violated his federal constitutional rights to due process and to present a defense when it excluded evidence of the victim's 20-year-old misdemeanor conviction for sexual battery because the evidence "would have supported the overall defense theory that appellant was not guilty of the charged first degree murder because he was acting in a heat of passion arising from provocation by the decedent." For the reasons explained below, we disagree with Soltero's contention of error.

Misdemeanor sexual battery involves a touching "against the will of the person touched . . . for the purpose of sexual arousal, sexual gratification, or sexual abuse." (Pen. Code, § 243.4.) Soltero has not demonstrated the relevance of evidence of the victim's sexual battery conviction to the facts and circumstances of this case. He has not explained how the victim's character as a misdemeanor sexual battery offender tends to prove the victim provoked Soltero in this case. After the trial court denied without prejudice Soltero's request to introduce this evidence to show "the person that he [the victim] was," Soltero never presented to the court any additional information regarding the relation between the victim's sexual battery conviction and the victim's conduct on the day of the murder.

Even assuming the evidence was relevant, the trial court did not abuse its discretion in excluding it under a section 352 analysis. The conviction occurred 21 years before the shooting,

9

diminishing its probative value as to whatever character trait Soltero sought to introduce it to prove. There was a substantial danger of confusing the issues or misleading the jury, in asking the jury to relate this remote conviction to the victim's conduct on the date of the murder. Finally, there was a substantial danger of inflaming the jury by labeling the victim as a "sex offender," when it was not clear his character as a sex offender was in any way related to his conduct on the day of the murder. Given the minimal probative value of this evidence, if any, the trial court did not violate Soltero's federal constitutional rights to due process or to present a defense, and it is inconceivable Soltero could have been prejudiced (under a state law or federal constitutional standard) by the exclusion of this evidence.

## II. Prosecutor's Argument on Premeditation and Deliberation

Soltero contends the prosecutor committed prejudicial misconduct during closing argument by misstating the law regarding premeditation and deliberation. "A defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety." (*People v. Thornton* (2007) 41 Cal.4th 391, 454.) Although defense counsel did not object to the prosecutor's argument to the jury regarding premeditation and deliberation, we nonetheless review the merits of Soltero's claim of prosecutorial misconduct because Soltero argues his trial counsel rendered ineffective assistance in not objecting to the argument.

To establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an

objective standard of reasonableness under prevailing professional norms and that he was prejudiced by the deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692; *People v. Williams* (1997) 16 Cal.4th 153, 215.)

### A. Proceedings below

Using CALCRIM No. 521, the trial court instructed the jury:

"The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation. The defendant acted *willfully* if he intended to kill. The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before completing the act that caused death.

"The length of time the person spends considering whether to kill does not alone determine whether the killing is deliberate and premeditated. The amount of time required for deliberation and premeditation may vary from person to person and according to the circumstances. A decision to kill made rashly, impulsively, or without careful consideration is not deliberate and premeditated. On the other hand, a cold, calculated decision to kill can be reached quickly. The test is the extent of the reflection, not the length of time.

"The People have the burden of proving beyond a reasonable doubt that the killing was first degree murder rather than a lesser crime. If the People have not met this burden, you must find the defendant not guilty of first degree murder and the murder is second degree murder."

11

During the prosecutor's initial argument to the jury, before defense counsel gave her closing argument, the prosecutor stated: "So, first degree murder is a killing with malice aforethought, but it requires it to be willful, deliberate, and premeditated. It adds those elements to it. That makes it a first degree murder. The willful part is what we talked about in terms of express malice. Remember I said you have to have express malice in order to have first degree murder? That's the willful part. The deliberate part and the premeditated part is what was being thought of before.

"And, now, generally, at this point, a lot of people start to think, 'Well, to have premeditation and deliberation, it requires some type of, you know, like when you watch these mafia movies and they're in the basement and playing poker and smoking cigars and, "We're going to kill Little Johnny," and then they plot this whole thing, and then they go to some car, and they shoot the guy in the back of the head, and then they're, like, you know, "Leave the gun. Take the cannolis," ' that type of thought process that was required. That is truly first degree murder; right? But that's not what is required for first degree murder.

"We do these acts of deliberation and premeditation on a daily basis, especially here in the City of Los Angeles. Think about it: Every day, you are premeditating and deliberating. If you're driving down Van Nuys Boulevard, you're thinking, 'Oh, my God, I'm late to court,' but then you're thinking, 'Oh, I could be late to work. But who cares? It's not going to start for another hour.' So, at that point, you're like, 'I'm going to stop for the yellow light. It's not worth the risk.' That's a form of premeditation and deliberation. Now you're leaving court, and you're going down Van Nuys Boulevard, and you're, like, 'I need

to get home because that was a long, tough day of waiting and hearing lots of arguments.' So you're rushing home, and you see that yellow light, and you really put the gas on because you want to get home. That's premeditation and deliberation. You're willing to risk. Sometimes, there's a risk of taking a -- that yellow light. Some other moron may be on the street and hit you because they're rushing another way. Every day, you see people make mistakes, and, every day, you're weighing the consequences when you're driving. We do this every day, and we do this instantly. That's premeditation and deliberation." Defense counsel did not object to the prosecutor's use of the yellow light scenario to demonstrate premeditation and deliberation, but on appeal Soltero contends this portion of the argument constitutes prosecutorial misconduct because it misstates the law regarding premeditation and deliberation.

The prosecutor continued on in his initial argument to the jury to describe the facts and circumstances demonstrating premeditation and deliberation in this case (e.g., Soltero returning to the victim's place of work after walking away several minutes before, and chasing the victim before shooting him).

**B.    Applicable law and analysis**

"A prosecutor's conduct violates the Fourteenth Amendment to the federal Constitution when it infects the trial with such unfairness as to make the conviction a denial of due process. Conduct by a prosecutor that does not render a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves the use of deceptive or reprehensible methods to attempt to persuade either the trial court or the jury. Furthermore, and particularly pertinent here, when the claim focuses upon comments made by the prosecutor before the jury,

13

the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales* (2001) 25 Cal.4th 34, 44; *People v. Cash* (2002) 28 Cal.4th 703, 733.) " 'Although counsel have "broad discretion in discussing the legal and factual merits of a case [citation], it is improper to misstate the law." ' " (*People v. Katzenberger* (2009) 178 Cal.App.4th 1260, 1266.)

Soltero's trial counsel was not ineffective in declining to object to the prosecutor's argument because the prosecutor did not misstate the law in using the yellow light scenario as an example of premeditation and deliberation. Indeed, the prosecutor's use of the yellow light scenario as an example of premeditation and deliberation is not novel. (See, e.g., *People v. Avila* (2009) 46 Cal.4th 680, 715 [rejecting prosecutorial misconduct claim based on prosecutor's use of yellow light analogy]; *People v. Wang* (2020) 46 Cal.App.5th 1055, 1086-1087 [same].) Consistent with the law on premeditation and deliberation, the prosecutor here described "carefully weigh[ing] the considerations for and against [the] choice and, knowing the consequences, decid[ing]" to run the yellow light. (CALCRIM No. 521.) The prosecutor described a scenario where you see a yellow light; you speed up because you are in a hurry to get home, and you do not want to stop and wait at the light; you realize there is a risk of accident, but you decide you are willing to accept the risk because you want to get home. The prosecutor did not posit a scenario where the driver proceeded rashly or impulsively without evaluating the choice.

Soltero argues the prosecutor's use of the word "instantly" rendered his argument a misstatement of the law regarding premeditation and deliberation. As set forth above, after

14

describing the yellow light scenario, the prosecutor stated: "Every day, you see people make mistakes, and, every day, you're weighing the consequences when you're driving. We do this every day, and we do this *instantly*. That's premeditation and deliberation." (Italics added.) We have no reason to believe the jury "construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Morales*, *supra*, 25 Cal.4th at p. 44.) What the prosecutor described is an instantaneous decision to weigh the consequences of a choice. A choice that is made rapidly, but after reflection and weighing of consequences, is a premeditated and deliberate choice.

We disagree with Soltero's assertion that the prosecutor inappropriately "equated a decision to kill with decisions made while driving in traffic." As the Court of Appeal explained in *People v. Wang*, *supra*, 46 Cal.App.5th 1055, "In the context of the argument it is apparent that the prosecutor did not equate the gravity of a decision to kill with a traffic decision, but used the illustration to show that, like a decision to drive through a yellow light, a premeditated and deliberate decision to kill could be made very quickly. Indeed, after using the traffic light analogy, the prosecutor reviewed the many conscious decisions appellant had to make before the shootings occurred." (*Id*. at p. 1086.)

Even if Soltero could establish his trial counsel's deficient performance in failing to object to the prosecutor's argument, his ineffective assistance of counsel claim would still fail because he cannot establish prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, *supra*, 466 U.S. at p. 694.) "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." (*Ibid*.)  We reject Soltero's assertion that in the absence of the prosecutor's use of the yellow light example, there is a reasonable probability "that at least some jurors would have found that the murder charge had not been proven beyond a reasonable doubt."  The evidence of premeditation and deliberation in this case was strong.  Soltero walked away after the argument, came back several minutes later, chased the unarmed victim, and shot and killed him.  If the prosecutor committed misconduct—which we already concluded he did not—trial counsel's decision not to object was harmless.[4]

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

[4] We reject Soltero's contention that cumulative error requires reversal of his conviction.  As explained above, there are not multiple errors here to cumulate.

16