Filed 6/28/21  P. v. Yousif CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br>v.<br>OSMAN ABDELMOMIA YOUSIF,<br>　　　Defendant and Appellant. | A158773<br><br>(San Mateo County<br>Super. Ct. No. 18-SF-007963-A) |

A jury convicted Osman Abdelmomia Yousif of criminal threats (Pen. Code, § 422, subd. (a); count one)[1], misdemeanor brandishing of a deadly weapon (§ 417, subd. (a)(1); count three), and carrying a concealed dirk or dagger (§ 21310; count four).  Yousif appeals, arguing that his convictions on counts one and three should be reversed because the prosecutor committed prejudicial misconduct and that the period of his probation must be reduced to two years.  We agree with Yousif on the latter point.  Accordingly, we direct the trial court to modify Yousif's probationary term and otherwise affirm the judgment.

---

[1]  Undesignated statutory references are to the Penal Code.

1

## BACKGROUND

### A.

In July 2018, Victor Chavarin, Conrrado Cardenas, and Cristian Camacho were employed as security guards on a farm in Half Moon Bay. The farm had "no trespassing" signs posted.

On July 3, Cardenas and Chavarin were patrolling, in a marked Jeep with a strobe light on the roof, when they saw Yousif on the property. Cardenas and Chavarin informed Yousif that he was trespassing and that they were security. Yousif kept walking.

Chavarin exited the Jeep and asked Yousif what business he had on the property. Yousif responded in a loud and aggressive tone, " 'Fuck you. Don't you know who I am? You better ask people about me. I'm Yousif.' " Cardenas also exited the Jeep and told Yousif he needed to leave. Yousif took a few steps toward Chavarin and faced him, in an aggressive stance. Chavarin pulled out a canister of pepper spray but did not point it at Yousif. Chavarin warned him that the police would be called if he did not leave. Cardenas also removed his pepper spray and pointed it towards the ground. Before leaving, Yousif threw a soda he had been carrying at Chavarin. While the cup did not hit Chavarin, some of the liquid sprayed him.

The next day, Yousif returned to the property when Cardenas and Camacho were working. Yousif was holding a shovel over his shoulder. Cardenas and Camacho were driving a marked Jeep and wearing t-shirts that showed the security company's logo. Cardenas parked the car, about five to 10 feet from Yousif, and the two guards got out.

Both guards asked Yousif what he was doing on the property— Camacho (in English) and Cardenas (in Spanish). Yousif, who had previously appeared calm, immediately became angry. Yousif responded, " 'Fuck you,

2

motherfuckers.  Speak English.  This is America.' "  Because Yousif was loud and threatening, both Camacho and Cardenas reached for their pepper spray. Yousif took a few steps towards them, lifted the shovel above his shoulder, and yelled, " 'Don't spray me, motherfuckers.  I'll fucking kill you guys.' "

Camacho, who weighed 115 pounds and was approximately 10 feet away from Yousif, felt "terrified" and backed away.  Cardenas, who did not speak fluent English, said he "wasn't afraid."  Yousif eventually lowered the shovel and walked away.  Camacho and Cardenas called the police.

Camacho and Cardenas encountered Yousif again, later that same afternoon.  He carried two rocks and a piece of lumber.  This time, the two security guards did not interact with Yousif but took photos of him from the safety of the Jeep and called the police.  When Yousif was arrested the next day, he was carrying a knife, concealed in his waistband.

## B.

The defense argued that the security guards' accounts were inaccurate and that any aggressive acts Yousif committed were in self-defense.

Yousif testified that farm employees had given him permission to cut across the property to get to a nearby homeless encampment.  He admitted entering the property on July 3, and that two men approached him and told him he was trespassing.  He did not leave because the men were not wearing uniforms and did not identify themselves as security.

Yousif testified that both men pulled out cans of pepper spray, and one of them "ma[de] gestures like he was about to point it like right at my face and spray it."  Yousif asked, " 'You really gonna spray me?' "  The men replied, " 'Yeah. You are trespassing.' "  Having previously heard from friends at the camp that they had been pepper sprayed on this property, and not wanting to be sprayed, Yousif ran away.

3

The next day, Yousif was walking on the property, holding a shovel, when two men approached in an SUV.  The men abruptly stopped and exited the vehicle but did not identify themselves.  Their clothing bore no identifying information.  Yousif testified that one of the men yelled at him in Spanish, and the other said, " 'You are trespassing.  I'll spray you.' "  The two men then grabbed their pepper spray and pointed the cannisters at him, even though he had not said or done anything threatening.  According to Yousif, he responded only by saying, " 'Don't you fucking spray me' " and " '[t]hat's fucked up.' "  He denied threatening the men.

## C.

The jury returned guilty verdicts on counts one, three, and four.[2]  The jury also found true an enhancement allegation—that Yousif used a deadly or dangerous weapon in making the criminal threat (§ 12022, subd. (b)(1)).  The trial court sentenced Yousif to state prison for a total term of two years and eight months but, despite his presumptive ineligibility for probation (§ 1203, subd. (e)(4)), ordered execution of that sentence suspended and placed Yousif on probation for three years.  The court found Yousif's substance abuse constituted an extraordinary circumstance and conditioned his probation on completion of a residential substance abuse treatment program.

## DISCUSSION

## A.

Yousif argues the prosecutor committed misconduct during closing argument that necessitates reversal of counts one and three.  We disagree.

## 1.

In the People's closing argument, the prosecutor stated:  "The judge is going to instruct you on self-defense, that that's the defense to -- and

---

[2] The court dismissed count two, on the prosecutor's request.

understandably.  If you find that he acted in self-defense because of these - - with respect to the 422, the criminal threat against Cristian Camacho Pena, that he is - - *it's a proof beyond a reasonable doubt standard*.  That he was so threatened by this five-foot-three, 115-pound guy who didn't want to hurt anyone, whose only experience in terms of being remotely this scared was when he ditched class and was worried about getting in trouble and that he had never in his life been in this sort of physically dangerous situation."  (Italics added.)  Defense counsel objected, on the grounds of "[b]urden shifting," and the trial court overruled the objection.

Defense counsel argued:  "[T]he burden is on the prosecution to prove beyond a reasonable doubt that my client did not act in self-defense.  We don't have to prove to you that we did act in self-defense.  They need to prove to you that he did not beyond a reasonable doubt."

After closing arguments, the trial court instructed the jury that, to convict Yousif of making criminal threats (count one) or brandishing (count three), the prosecution had the burden of proving beyond a reasonable doubt that Yousif did not act in lawful self-defense.  (See CALCRIM Nos. 983, 3470.)

**2.**

The United States Constitution is violated when a prosecutor's conduct is so egregious that it infects the trial with such unfairness as to make the resulting conviction a denial of due process.  (*People v. Flores* (2020) 9 Cal.5th 371, 403.)  A prosecutor's lesser misconduct will violate state law " ' "if it involves the use of deceptive or reprehensible methods to persuade the . . . jury." ' "  (*Ibid.*)

A prosecutor commits misconduct when she misstates the law during argument to the jury.  (*People v. Morales* (2001) 25 Cal.4th 34, 43.)  It is

5

particularly improper for the prosecutor to "attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements." (*People v. Marshall* (1996) 13 Cal.4th 799, 831.) We must decide whether there is a reasonable likelihood, in the context of the whole argument and the court's instructions, that the jury construed the prosecutor's remarks as placing on Yousif the burden of proving, beyond a reasonable doubt, that he acted in self-defense. (*People v. Potts* (2019) 6 Cal.5th 1012, 1036-1037; *People v. Samayoa* (1997) 15 Cal.4th 795, 842; *People v. Marshall, supra,* 13 Cal.4th at p. 831.)

**3.**

We agree with the People that there is no reasonable likelihood the jury believed that Yousif bore the burden of proving he acted in lawful self-defense.

In the challenged portion of his argument, the prosecutor permissibly attacked Yousif's credibility. (*People v. Centeno* (2014) 60 Cal.4th 659, 672.) The prosecutor also stated the applicable standard of proof but did not say that the defense had the burden of meeting it. The prosecutor's sentence structure may have been awkward, but the stray comment about the standard of proof was fleeting.

The jury was properly instructed that the defendant was presumed innocent; that the People had the burden to prove, beyond a reasonable doubt, that Yousif did not act in self-defense; and that it should disregard any conflicting statements on the law. The court specifically told the jury: "You must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." The prosecutor himself repeatedly reminded the jury that it must follow the law as laid out in the jury

6

instructions, and acknowledged the People had the responsibility to prove each element beyond a reasonable doubt. Even in the comments that Yousif challenges, the prosecutor explicitly referred the jury back to the court's instruction on self-defense.

Considering the instructions and argument as a whole, there is no reasonable likelihood the jury understood the prosecutor to be arguing, contrary to the court's instructions, that Yousif had the burden of proving self-defense. (See *People v. Potts, supra*, 6 Cal.5th at p. 1037; *People v. Samayoa, supra,* 15 Cal.4th at p. 842.) We conclude there was no misconduct and no violation of Yousif's rights to due process and a fair trial.

**B.**

At the time the trial court placed Yousif on probation, section 1203.1, subdivision (a), authorized imposition of felony probation "for a period of time not exceeding the maximum possible term of the sentence" or, where the maximum possible term was five years or less, for a maximum of five years. (Former § 1203.1, subd. (a), as amended by Stats. 2010, ch. 178, § 75; *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1070.) While Yousif's appeal was pending, the Legislature enacted Assembly Bill No. 1950 (2019–2020 Reg. Sess.), which limits felony probation to a maximum term of two years for most felony offenses, with exceptions that do not apply here. (§ 1203.1, subds. (a), (m); Stats. 2020, ch. 328, § 2, eff. Jan. 1, 2021.)

In supplemental briefing, Yousif argues the two-year limit should be applied retroactively. The People concede that the ameliorative amendment applies retroactively to judgments, like Yousif's, that are not yet final. (*People v. Stewart, supra*, 62 Cal.App.5th at p. 1074; *People v. Sims* (2021) 59 Cal.App.5th 943, 964; *People v. Quinn* (2021) 59 Cal.App.5th 874, 881, 883.) We agree.

However, the People ask us to remand the case so that the trial court may correct the probationary term after addressing Yousif's progress and compliance. (See *People v. Lord* (2021) 64 Cal.App.5th 241, 246 [remanding for resentencing]; *People v. Sims, supra*, 59 Cal.App.5th at pp. 947, 964 [same].) We agree with Yousif that resentencing in this instance would waste scarce judicial resources. Nothing stated in this opinion precludes a party from seeking expungement or modification of Yousif's probation terms in the trial court. (See *People v. Quinn, supra*, 59 Cal.App.5th at p. 885, fn. 6.)

## DISPOSITION

The trial court is directed to modify its August 22, 2019 minute order to specify a two-year term of probation and to notify the San Mateo County Probation Department of that modification. In all other respects, the judgment is affirmed.

_____
BURNS, J.

We concur:


_____
SIMONS, ACTING P.J.



_____
RODRIGUEZ, J.*



A158773

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9