Filed 5/15/25  P. v. Mercurio CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>COREY THOMAS MERCURIO,<br><br>      Defendant and Appellant. | A170315<br><br>(San Mateo County Super.<br> Ct. No. 23-SF-016556-A) |

A jury convicted Corey Thomas Mercurio of felony resisting an executive officer pursuant to Penal Code[1] section 69, among other offenses. On appeal, Mercurio argues the trial court failed to instruct the jury on the lesser included offense of resisting arrest under section 148, subdivision (a)(1) (section 148(a)(1)), the prosecution engaged in misconduct by misstating the law in closing argument, and the cumulative effect of both asserted errors warrants reversal.  We disagree and affirm.[2]

---

[1] Further undesignated statutory references are to the Penal Code.

[2] During the pendency of this appeal, Mercurio's appellate counsel filed a petition for habeas corpus relief in this court.  We deny the habeas petition (A172322) by separate order filed this day.

1

## BACKGROUND

On the evening of October 12, 2023, Donna Wilson returned home from the airport to find an individual, later identified as Mercurio, "slumped over and sleeping" in the front passenger seat of her daughter's car and called the police. Around 9:50 p.m., San Mateo County Deputy Sheriff Brian Brandt responded in a marked patrol vehicle without activating the car's lights or siren; Brandt parked approximately 50 feet from the Wilson's driveway where he "met up with two other deputies, Deputy Johnson and Deputy Del Selva," who arrived separately. All three deputies were in uniform.

Upon approach, Brandt, Del Selva, and Johnson observed Mercurio asleep or unconscious in the front passenger seat of the car. The deputies illuminated the interior of the car with flashlights, but Mercurio did not react or respond.

The deputies "formulated a plan" to quickly remove Mercurio from the vehicle to prevent Mercurio from barricading himself inside or using a weapon. Del Selva opened the front passenger door and reached for Mercurio's left arm while Brandt and Johnson reached for Mercurio's right arm; Brandt "simultaneously" announced "sheriff's office" twice.

As the officers attempted to remove Mercurio from the car, they were "immediately pushed forward" by Mercurio and "within a second," everyone, including Mercurio, "ended up on the bush next to the vehicle." Mercurio was on his stomach in the center of the bush with Brandt at his right arm, Del Selva at his left arm, and Johnson by his legs; a struggle ensued.

Officers instructed Mercurio to stop resisting but Mercurio "continued to pull away, tense up, flail, [and] kick." Del Selva was able to handcuff Mercurio's left wrist, but Mercurio "tucked his right arm underneath his body," which prevented Brandt from handcuffing Mercurio's right wrist.

As officers were giving commands, Mercurio was "screaming," which caused a neighbor to come out of their house "to see what was going on." The officers identified themselves as sheriff's deputies, and the neighbor "stepped back" and returned home.

At one point, Del Selva "quieted down Deputy Brandt and Deputy Johnson, who were also giving commands, and made it so [Mercurio] could only hear [Del Selva's] voice and made it clear, 'If you can feel this, it's only going to get worse if you don't give me your right arm.' At that point, [Mercurio] started to surrender and then immediately started tensing back up and resisting again."

During the struggle, Mercurio was "actively trying to kick" Johnson and successfully kicked Johnson in the chest, knocking off Johnson's body camera; Johnson sprained his left thumb and scraped his right knee. After approximately two minutes, the officers used a second pair of handcuffs to restrain Mercurio; they then walked him to a patrol car.

Mercurio initially identified himself as "Corey Bancroft," but after officers were unable to verify the name and birthday, Mercurio provided his correct name and date of birth. A search of Mercurio's person uncovered "two window punches," which are devices used to shatter glass windows, multiple latex gloves, and a wallet belonging to Wilson's daughter.

On October 16, 2023, the People charged Mercurio with five counts— felony burglary (§ 460, subd. (b), count 1); felony resisting an executive officer (§ 69, count 2); misdemeanor resisting a public officer (§ 148(a)(1), count 3); misdemeanor possessing burglary tools (§ 466, count 4); and misdemeanor giving false information to a police officer (§ 148.9, subd. (a), count 5). The November 9, 2023 information alleged prior felony convictions pursuant to

3

section 1203, subdivision (e)(4) and section 1170.12, subdivision (c)(1) with respect to counts 1 and 2. Mercurio pled not guilty to all charges.

The jury was sworn on January 10, 2024. Deputies Brandt, Del Selva, and Johnson testified for the prosecution, as did the car's owner Wilson; the People rested on January 11. Mercurio rested without calling additional witnesses, electing "to rely on the state of the evidence."

On January 12, 2024, the jury returned a verdict, finding Mercurio not guilty of count 1 (burglary) but guilty of counts 2 through 5. The court found true the special allegations as to count 2 and denied probation.

On February 20, 2024, the court sentenced Mercurio to the low term of 16 months for the felony conviction of resisting an executive officer and doubled the term pursuant to section 1170.12, subdivision (c)(1) for a total sentence of 32 months. The court imposed concurrent terms of 180 days with credit for time served for the misdemeanor convictions on counts 3, 4, and 5. The court also imposed a restitution fine and mandatory fees and imposed but stayed a parole revocation fine.

On April 9, 2024, Mercurio filed a notice of appeal.

## DISCUSSION

On appeal, Mercurio seeks reversal of his conviction on count 2 for resisting an executive officer (violation of § 69), which was based on Mercurio kicking Johnson. According to Mercurio, the trial court should have instructed the jury on the lesser included offense of resisting arrest under section 148(a)(1). Moreover, Mercurio claims the prosecutor engaged in misconduct by misstating the law during closing argument. Anticipating a forfeiture objection, Mercurio asserts any failure to raise these arguments below was due to ineffective assistance of counsel. Because Mercurio's

4

habeas petition also claims ineffective assistance of counsel, we ordered it would be considered with the appeal.

## I.  Lesser Included Offense

Prior to instructing the jury, the parties agreed to give CALCRIM No. 2652, the model jury instruction for a section 69 violation.  The court inquired, "And to be clear, neither party on 2652 wants a lesser-included of PC 148?"  Both attorneys declined without discussion, and the court moved on to the next instruction.

Mercurio now argues the trial court committed reversible error by failing to instruct the jury sua sponte on section 148(a)(1) as a lesser included offense of section 69.  Specifically, Mercurio asserts "there was substantial evidence that tended to negate the knowledge element that is present under section 69."  The People counter, asserting the evidence showed Mercurio knowingly resisted the deputies "forcefully and violently, thereby precluding an instruction on section 148."

"On appeal, we review independently the question whether the trial court improperly failed to instruct on a lesser included offense." (*People v. Souza* (2012) 54 Cal.4th 90, 113.)  A trial court must instruct the jury on a lesser included offense if substantial evidence supports a finding that the defendant committed only the lesser offense and not the charged greater offense. (*People v. Smith* (2013) 57 Cal.4th 232, 239–240 (*Smith*).)

Section 69 prohibits deterring or preventing an executive officer from performing a legal duty or knowingly resisting an officer in the performance of a legal duty by means of any threat or violence.  (§ 69, subd. (a).)  Thus, section 69 " 'sets forth two separate ways in which an offense can be committed.  The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by

5

force or violence an officer in the performance of his or her duty.' " (*Smith, supra,* 57 Cal.4th at p. 240, quoting *In re Manuel G.* (1997) 16 Cal.4th 805, 814.) Accordingly, section 148(a)(1)—which prohibits resisting, delaying, or obstructing any public officer or peace officer in the discharge of duty without regard to force—is a lesser included offense of section 69 only when, as in the present case, the accusatory pleading alleges violation of section 69 based on the second means of commission, i.e., resisting by force or violence. (*Smith,* at pp. 241–242.) As the parties agree, the information alleged Mercurio violated section 69 both ways, making section 148(a)(1) a potential lesser included offense of section 69 under the prosecution's stated theory that Mercurio resisted through force or violence. (*Smith,* at pp. 241–242.)

The question then becomes whether substantial evidence was presented at trial supporting *only* a conviction for the lesser offense of violating section 148(a)(1).[3] (*Smith, supra,* 57 Cal.4th at pp. 239–240; accord, *People v. Wyatt* (2012) 55 Cal.4th 694, 703 ["Thus, the question is whether substantial evidence supported a conclusion that defendant committed only" the lesser included offense].) Under the circumstances of this case, we conclude there was no basis for instructing the jury on section 148(a)(1).

Section 69 "requires actual knowledge on the part of the defendant that the person being resisted is an executive officer and that the officer is engaged in the performance of his/her duty." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 237; see also *People v. Atkins* (2019) 31 Cal.App.5th

---

[3] In engaging in this analysis, we examine only the evidence presented concerning the interactions resulting in injury to Officer Johnson, which was the subject of count 2, and not the interactions concerning Officer Brandt, who was the subject of count 3, where Mercurio was both charged with and convicted of a misdemeanor violation of section 148(a)(1). That conviction is not included within the scope of this appeal.

963, 977.) On the other hand, section 148(a)(1) requires that the defendant "knew *or* reasonably should have known the person they resisted was a police officer." (*People v. Serna* (2025) 109 Cal.App.5th 563, 567; see also *People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1421.)

Mercurio claims a "jury could have reasonably concluded that the evidence failed to demonstrate [Mercurio] actually knew he was resisting an executive officer, given that he was unconscious and then positioned face down on the ground." But the evidence before the jury demonstrated that Mercurio consciously and actively resisted the officers—specifically Officer Johnson—as soon as they announced their presence.

Uniformed officers opened the car door, announced sheriff's office twice, and tried to take hold of Mercurio, who used the force of his bodyweight to throw everyone to the ground. Mercurio "didn't appear out of it or disoriented," but continued pulling away, tensing up, flailing, and screaming, despite commands to stop resisting. Even when his left wrist was handcuffed, Mercurio continued to struggle and hid his right wrist under his body. During the two-minute encounter, Mercurio was "actively trying to kick Deputy Johnson" before officers were able to successfully detain him.

Any question about Mercurio's consciousness is settled by his response to Del Selva's comment, " 'If you can feel this, it's going to get worse if you don't give me your right arm,' " after which Mercurio "started to surrender [but] then immediately started tensing back up and resisting again." Moreover, after officers again identified themselves to a third party observer, Mercurio "tried to kick [Johnson] one more time," hitting Johnson in the chest and knocking off his body camera.

This corroborative and unchallenged testimony provides substantial evidence of both Mercurio's knowledge of the situation and the deputies'

identity, as well as his use of violence to resist the officers in the performance of their duties. As such, there is insufficient evidence to support an instruction for the lesser section 148(a)(1) offense, which requires neither actual knowledge nor violence. (*People v. Serna, supra,* 109 Cal.App.5th at p. 567; see also *People v. Rasmussen, supra,* 189 Cal.App.4th at p. 1421.) Accordingly, we find no error. Because the People do not argue forfeiture in this instance, we do not address Mercurio's claim of ineffective assistance of counsel.

## II. Prosecutorial Misconduct Claim

In closing arguments, rather than explain a section 69 conviction required the jury to find Mercurio's "knowing" resistance, the district attorney stated Mercurio could be found guilty on count 2 if he " 'either knew or reasonably should have known' " the deputies were executive officers performing official duties, even suggesting that the jury instructions "should" include the knew or reasonably should have known standard. In rebuttal, the district attorney repeated the incorrect standard: "And again, the instruction isn't, you know, did he understand. . . . No. It's did he know or should he reasonably have known?" "And that's what you have to decide is: Did he know or should he have known?"

According to Mercurio, these are two of the "12 misstatements of the law pertaining to count 2 during closing and rebuttal arguments, none of which were the subject of a defense objection." Mercurio argues "the prosecutor's repeated misstatements of the knowledge standard with respect to count 2 . . . constituted pervasive, prejudicial misconduct." Mercurio further asserts his trial counsel rendered ineffective assistance by failing to object to the misstatements.

The People acknowledge at least four misstatements of the law but contend the trial court properly instructed the jury on the required mental state, Mercurio forfeited his argument of prosecutorial misconduct and error by failing to object, and his ineffective assistance of counsel claim fails for lack of prejudice.  Because the People concede the prosecutor's inaccurate statements of the law constitute misconduct, we begin with the People's forfeiture argument before considering Mercurio's ineffective assistance claim.

First, Mercurio failed to preserve this argument for appeal.  To preserve a claim of prosecutorial misconduct, a defendant must make a timely and specific objection and request the jury be admonished.  (*People v. Johnsen* (2021) 10 Cal.5th 1116, 1164–1165 [finding prosecutorial misconduct claim forfeited for failing to object].)  Here, while the court sustained other defense objections, Mercurio's counsel did not object to the misstatements regarding count 2, thereby forfeiting the challenge on appeal.

In any event, the prosecutor's misstatements did not amount to a violation of Mercurio's federal Constitutional rights, nor is it reasonably probable that Mercurio would have been acquitted absent the misstatements.  (*People v. Johnsen*, *supra*, 10 Cal.5th at p. 1167 [finding undisputed misstatements about reasonable doubt standard harmless when viewed in context]; see also *People v. Morales* (2001) 25 Cal.4th 34, 47 ["no reasonable likelihood" the prosecutor's misstatement of the law regarding possession of a controlled substance at closing argument "misled the jury in an objectionable fashion"].)

Although Mercurio asserts the prosecutor misstated the law "approximately 12 times," not all the cited references were inappropriate.  Some of the prosecution's statements accurately stated the standard with

9

respect to other charges—which did include a section 148(a)(1) violation charged as count 3 and its lesser "reasonable knowledge" standard—or summarized Mercurio's defense theory, and at least one statement characterized the state of the evidence, as opposed to stating the legal standard. (*People v. Seumanu* (2015) 61 Cal.4th 1293, 1330 [prosecutor's closing argument "may be strongly worded and vigorous so long as it fairly comments on the evidence admitted at trial or asks the jury to draw reasonable inferences and deductions from that evidence"].)

Further, "we presume that the jury relied on the instructions, not the arguments," in convicting Mercurio. (*People v. Morales*, *supra*, 25 Cal.4th at p. 47.) Here, the court instructed the jury to follow the law as the court provided it and decide the case based on the evidence presented in the courtroom, noting that "[n]othing the attorneys say is evidence." "If you believe that the attorneys' comments on the law conflict with my instructions," the court instructed, "you must follow my instructions." The court noted the "instruction for each crime, . . . explains the mental state required," and with respect to count 2, the court properly instructed jurors that "when the defendant acted, the defendant knew that the person he resisted was an executive officer," pursuant to CALCRIM No. 2652.[4] Thus, the instructions on count 2 were correct, and we presume the jury followed them.

---

[4] Notably, CALCRIM No. 2652 incorporates the instructions for the lawful performance of duties by a peace officer, which does include a "reasonable knowledge" standard (CALCRIM No. 2670): "If a person *knows, or reasonably should know*, that a peace officer is arresting or detaining him, the person must not use force or any weapon to resist the officer's use of reasonable force." (Italics added.)

Moreover, at the beginning of closing arguments, the prosecutor reinforced the court's pretrial instructions, telling jurors to the extent the prosecution's closing "is in contradiction or contradicted by what the judge told you, always go with what the judge told you." Similarly, defense counsel's closing argument reminded jurors they would "have the instructions in the jury room. Each instruction will refer to what count it relates to, and you can always ask a clarifying question of the court if there is disagreement about what those mean. Start from that premise." The jury did not ask any clarifying questions, further supporting the presumption they followed the court's instructions. Accordingly, any misstatements of the law in closing argument were harmless.

Finally, considering Mercurio's arguments on appeal and in his habeas petition, we reject his ineffective assistance of counsel claim. "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance." (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502.) Regardless, we identify no prejudice. (*In re Crew* (2011) 52 Cal.4th 126, 150 ["If a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient"].)

### III. Cumulative Error

Last, Mercurio argues the combined effect of the two purported errors—the lack of a section 148(a)(1) instruction as a lesser included offense of section 69 and the prosecution's misstatements of the law—"collectively undermined the fairness of the trial and compel reversal on count 2." We disagree. As discussed, we see no error in the trial court's instructions to the jury on count 2. Thus, the only presumed error is the prosecution's misstatements during closing argument, which we find harmless. Absent a

11

second error, there is nothing to cumulate.  (See *People v. Koontz* (2002) 27 Cal.4th 1041, 1094 ["With respect to the penalty phase, we have found no error to cumulate"]; see also *People v. Cole* (2004) 33 Cal.4th 1158, 1235–1236 [no cumulative error where assumed errors were " 'nonprejudicial' "].)

## DISPOSITION

The judgment is affirmed.

DESAUTELS, J.

We concur:

RICHMAN, ACTING P. J.

MILLER, J.

*People v. Mercurio* (A170315)